Stanley J. MUTE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6472.

Court of Appeals of Alaska.

March 27, 1998.

Scott Jay Sidell, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

*OPINION*

MANNHEIMER, Judge.

Stanley J. Mute was convicted of first-degree sexual assault, AS 11.41.410(a)(1), and second-degree assault, AS 11.41.210(a)(2), for raping and seriously injuring his girlfriend.

(The superior court merged these counts at Mute's sentencing.) Mute was convicted of a separate count of second-degree assault for breaking the arm of his girlfriend's brother during the same episode.

■ Mute appeals these convictions on two grounds. First, Mute asserts that the superior court should have taken action before trial to replace the assistant public defender who was representing him. Mute contends that this action was necessary because the attorney-client relationship had broken down. Second, Mute asserts that, because the attorney-client relationship had broken down, his subsequent waiver of his right to testify at his trial was invalid. We reject both of these contentions.

Mute was represented by Assistant Public Defender Victor D. Carlson. One week before trial, at calendar call, Mute expressed dissatisfaction with Carlson: he told Superior Court Judge Mary E. Greene that he had lost confidence in Carlson's integrity and competence. When Judge Greene asked Mute to elaborate on this dissatisfaction, Mute told her that he believed Carlson would not "object for [him]" and that he did not feel comfortable with Carlson. Judge Greene informed Mute that these complaints did not represent a sufficient reason for removing Carlson from the case. Mute named another local attorney and asked Judge Greene if this other attorney could be substituted for Carlson, but Judge Greene told Mute that this was not possible.

This issue arose a second time, just as Mute's trial was about to begin. Mute again asked Judge Greene to replace Carlson with some other attorney. Mute complained that Carlson believed he was guilty, that Carlson had not filed the pre-trial motions that Mute had requested, and that Carlson had not discussed the defense strategy with him. Judge Greene again asked Mute to explain the basis of his dissatisfaction in more detail. However, upon further questioning, Mute was unable to identify any pre-trial motion that Carlson had refused to file. Mute also agreed that Carlson had informed him of the details of the State's evidence and that Carlson had spoken with Mute to elicit Mute's side of the story.

After hearing Mute's answers, Judge Greene again denied Mute's request to discharge Carlson:

> From what I have heard . . . , I don't see anything that would rise to the level of ineffective assistance of counsel, even on a *prima facie* showing. Therefore, I'm going to deny your motion [for] a different attorney. We'll go forward with the case. If, at the end, you're still dissatisfied, I'll appoint another attorney to investigate your claims.

On appeal, Mute contends that Judge Greene should have honored his request for another attorney because there was a "complete and irreconcilable breakdown of the attorney-client relationship". The record does not support this assertion.

■ Mute may have been unhappy with Carlson's view of the case and with some of the strategic choices that Carlson made. However, Carlson was representing Mute under court appointment. Mute did not have the power to dismiss Carlson, nor did Mute have the right to have Carlson discharged at will. "[I]ndigent defendants are not constitutionally entitled to counsel of their choice[.]" *Coleman v. State*, 621 P.2d 869, 878 (Alaska 1980).

As this court stated in *Monroe v. State*, the right to effective assistance of counsel

> does not encompass the right to reject appointed counsel and have new counsel appointed in the absence of any showing of cause for such change. The due process clauses of the state and federal constitutions do not guarantee a "meaningful relationship" between client and his appointed counsel.

*Monroe*, 752 P.2d 1017, 1020 (Alaska App. 1988), citing *Morris v. Slappy*, 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983); *V.F. v. State*, 666 P.2d 42, 46–47 n. 5 (Alaska 1983).

The record in Mute's case does not show that relations between attorney and client had deteriorated to the point where Carlson was incapable of effective communication or objective decision-making. Moreover, absent extraordinary circumstances, Judge Greene was rightfully hesitant to enter into an ex-

tended examination of Carlson's view of the case and his trial strategy, or to otherwise insinuate herself as referee in the attorney-client relationship. Judge Greene therefore did not abuse her discretion when she denied Mute's motion to discharge Carlson. *See Coleman,* 621 P.2d at 879–880.

(We note that Mute is currently litigating a post-conviction relief action based on the assertion that Carlson failed to provide him effective representation.)

██ Mute's second point on appeal is that, because of the purported breakdown in the attorney-client relationship, Mute's mid-trial waiver of his right to testify was invalid. We reject Mute's argument for two reasons. First, whatever Mute's dissatisfaction with Carlson's handling of the case, there was no "breakdown" in the attorney-client relationship as that term has been defined in our previous decisions. Second, even if there had been a breakdown in the attorney-client relationship, this would not invalidate Mute's waiver of his right to testify.

██ In *LaVigne v. State,* 812 P.2d 217, 219 (Alaska 1991), the Alaska Supreme Court declared that "[t]he ultimate decision whether to exercise the right [to testify at trial or the right to remain silent] rests with the defendant, not with defendant's counsel." For this reason, the supreme court established what is now known as the *LaVigne* rule. Whenever the defense indicates an intention to rest without presenting the defendant's testimony, the trial judge must advise the defendant personally that, regardless of the defense attorney's advice on this point, the choice whether or not to testify rests with the defendant. After making sure that the defendant understands this, the judge must then inquire whether the defendant voluntarily waives the right to testify. *But compare Knix v. State,* 922 P.2d 913, 917–19 (Alaska App.1996) (indicating that, when a defendant chooses not to take the stand, a trial judge complies with *LaVigne* if the judge clearly notifies the defendant that it is the defendant's choice whether or not to testify, even if the defendant then refuses to enter an explicit waiver of the right to testify).

At Mute's trial, after the State rested, the defense attorney conferred with Mute and then informed Judge Greene that (1) Mute had decided not to testify, and (2) the defense would not be presenting any other witnesses. This announcement prompted Judge Greene to engage in a *LaVigne* inquiry with Mute:

DEFENSE COUNSEL: I have just conferred with my client. He does not want to take the witness stand. He [also] doesn't want me to call his brother, who is available out in the hall, to take the witness stand. And we have no other witnesses, Your Honor.

THE COURT: All right. The law requires me, Mr. Mute, just to make sure from your own words that you understand that you have the right to testify if you want to and that's your choice. Understand that?

MUTE: Your Honor, ... my constitutional rights have been violated. I would not like to testify.

THE COURT: All right. You understand that is your right, and yours alone?

MUTE: It is—I believe it's my right not to t ...

THE COURT: It is your right.

On appeal, Mute concedes that he appears to have waived his right to testify, but he asserts that his decision not to testify was motivated by mistrust of his defense attorney and was ultimately the product of the irreparable breakdown in the attorney-client relationship. Mute's argument is premised on a misunderstanding of the goals of *LaVigne.*

The *LaVigne* inquiry is primarily intended to ensure that a criminal defendant understands that the decision whether or not to take the stand ultimately rests with the defendant personally, regardless of what the defendant's attorney may say or advise. Once a defendant understands this, it is not the trial judge's place to offer advice regarding this decision or to interrogate the defendant regarding the wisdom of their decision.

It is true that *LaVigne* directs trial judges to "make an on-the-record inquiry ... into whether a nontestifying defendant ... voluntarily waives his right [to testify]". 812 P.2d at 222. In other contexts—most notably, when a defendant attempts to waive their

right to counsel or their right to a jury trial—the trial judge's duty to obtain a knowing and voluntary waiver from the defendant may entail close questioning of the defendant concerning the reasons for, and the possible consequences of, the defendant's decision. *See e.g., Dolchok v. State,* 639 P.2d 277, 286 (Alaska 1982); *Walker v. State,* 578 P.2d 1388, 1389–91 (Alaska 1978); *McGlauflin v. State,* 857 P.2d 366, 368–69 (Alaska App. 1993). However, as this court pointed out in *Knix,* if *LaVigne* is read to require a similar waiver of the right to testify, the opinion becomes "conceptually troublesome". 922 P.2d at 918 n. 6.

When the issue is a defendant's waiver of jury trial or waiver of counsel, the law provides a "default" solution for situations in which the judge is not sure whether a defendant's purported waiver is knowing and voluntary. *Knix, supra.* If a defendant fails to enter a voluntary waiver of the right to jury trial, the case will be tried to a jury. Similarly, if a defendant fails to enter a voluntary waiver of the right to counsel, the defendant will be represented by counsel. *Id.* However, when a defendant declares that they will not take the stand, but then fails to provide a "voluntary waiver" of the right to testify, the trial judge is faced with a dilemma. *LaVigne* seemingly requires the judge to secure a voluntary waiver from the defendant before the case can proceed, but the judge obviously can not order the defendant to testify.

> The right to testify and its corollary, the right to silence, stand on unique footing. Both are fundamental and constitutionally enshrined. Neither has been established as clearly dominant over the other; they are equally vital. Yet one right is essentially active, while the other is passive: exercise of the right to testify requires the defendant's active participation; the right to silence can be asserted by complete inaction. And the two rights are mutually exclusive. A defendant cannot simultaneously exercise the right to testify and to remain silent. The exercise of one right necessarily entails a relinquishment of the other.
>
> Given the unique nature and relationship of these corollary rights, a rule actually requiring an on-record, voluntary waiver of the right to testify leads to a profound conundrum: what is to be done in the case of a defendant who is unwilling to knowingly and voluntarily relinquish either the right to testify or the right to remain silent? There is seemingly no default option. If a defendant stands mute in the face of a *LaVigne* inquiry or expresses continuing confusion over the court's explanation of procedural rights, a finding of voluntary waiver of the right to testify might strain law and logic. Yet the trial court cannot direct the defendant to testify; nor would it be a palatable alternative to abort the trial—a measure that would put the power of mistrial in the hands of virtually any enterprising defendant.

*Knix,* 922 P.2d at 918 n. 6.

■ In *Knix,* we concluded that "[t]hese hypotheticals ... counsel against a hasty conclusion that *LaVigne* should be construed to hold that knowing and voluntary on-record waiver of the right to testify will always be required when a criminal defendant declines to testify." *Id.* For similar reasons, we conclude that it is not a trial judge's function under *LaVigne* to question the defendant about their reasons for declining to take the stand. A judge must advise the defendant that the choice rests with them, but the judge need not question the defendant to make sure that they have fully considered their options, that they have received competent advice from their attorney, and that they are making an informed choice.

As *Knix* points out, the law provides no ready answer, and prescribes no proper course of action, for a judge who concludes that the defendant's *LaVigne* waiver is not "knowing and voluntary". When a defendant announces that they do not intend to take the stand, a judge can not order the defendant to testify even if the judge is convinced that the defendant's decision is based on incomplete or incompetent advice from defense counsel, or if for any other reason the judge concludes that the defendant's decision is hasty or ill-advised.

We therefore hold that, even if Mute's decision to refrain from testifying was prompted by his distrust of his attorney and his perception that the attorney-client relationship had broken down beyond repair, this would not invalidate his *LaVigne* waiver.

The record shows that Mute understood that the law gave him the right to decide whether or not to testify. In fact, he affirmatively asserted his right not to testify. His reasons for doing so are not proper concerns under *LaVigne.*

The judgement of the superior court is AFFIRMED.