**Evan C. SERGIE, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–8190.

Court of Appeals of Alaska.

Feb. 4, 2005.

Rehearing Denied Feb. 24, 2005.

Colleen A. Libbey and Daniel E. Libbey, Libbey Law Offices, Anchorage, for the Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Evan C. Sergie was convicted of attempted first-degree sexual assault,[1] resisting arrest,[2] interfering with the report of a domestic violence crime,[3] and two counts of fourth-degree assault.[4] On appeal, Sergie claims that neither the attempted sexual assault conviction nor the resisting arrest conviction were supported by sufficient evidence. Sergie also argues that the trial court erred in failing to discharge his publicly appointed counsel and by issuing a faulty jury instruction. We conclude that there is ample evidence to support Sergie's convictions. We also conclude that the superior court did not err in failing to discharge Sergie's counsel. Finally, we reject Sergie's attack on the jury instructions. Therefore, we affirm Sergie's convictions.

### Facts and proceedings

On June 2, 2001, Evan Sergie, his wife, S.S., and their two-year-old son, J.S., traveled to Dillingham to visit A.S., Sergie's sister. After they arrived at A.S.'s house, Sergie went to the liquor store and bought a twelve-pack of beer and a pint of rum. Sergie, A.S., and S.S. spent the rest of the evening drinking together.

The next morning, the trio awoke and continued drinking. After a while, Sergie and A.S. argued. Sergie told S.S. to get J.S. dressed because he wanted to leave. S.S. prepared J.S., then returned to the living room to tell Sergie that they were ready to go. Sergie told her that everything was all right and that he and his sister had "calmed down," so S.S. took J.S. back into the bedroom of K.S., another family member.

The trio continued drinking. Soon, A.S. and Sergie resumed arguing. This time, Sergie and A.S. pushed and shoved each other. Sergie again told S.S. to get J.S. ready to go. After S.S. had left the room, the argument ended when Sergie pushed A.S. onto the kitchen floor and then threw a chair across the room.

Sergie then began arguing with S.S. and pushed her down. Testimony differed on what happened next. A.S. testified that she passed out after her fight with Sergie and that when she woke up, she saw S.S. lying on the floor. Sergie had removed S.S.'s shirt and bra, and was trying to remove her pants. Sergie was also trying to pull S.S.'s legs apart. S.S. was holding onto her pants, kicking her legs, and saying "come on, come on." A.S. testified that she then went to her phone and called the police. Sergie hung up the phone, and then told S.S. to go into the bedroom and get the baby ready to go. Sergie and S.S. went into the bedroom, where Sergie continued to "holler" at S.S. A.S. then called the police for a second time.

Another witness, K.S., testified that after Sergie had pushed S.S. onto the floor, Sergie told S.S. to "spread [her] legs" and he unbuttoned her pants. A.S. told Sergie to stop it, and helped S.S. get up and re-button her pants. Sergie and S.S. continued to argue. Sergie then grabbed S.S. and shoved her again. K.S. took J.S. from Sergie and carried him into A.S.'s bedroom, where she asked one of her friends to watch him. When K.S. came back out into the kitchen, she found S.S. lying on the floor with her shirt and bra off. Sergie was trying to remove S.S.'s pants. S.S. was saying "yeah, yeah, take my pants off." K.S. testified that

---

1. AS 11.41.410(a)(1) and AS 11.31.100(a).

2. AS 11.56.700(a)(1).

3. AS 11.56.745(a).

4. AS 11.41.230(a)(1).

S.S. was not trying to keep Sergie from taking her pants off, but that she seemed upset. At that point, K.S. testified, A.S. intervened and told Sergie to stop it. A.S. then helped S.S. off the floor and helped her put her shirt back on.

S.S. testified that after Sergie had shoved her onto the floor, she got up and went to the living room. Sergie followed S.S. and shoved her again. S.S. landed on her back on the kitchen floor. S.S. passed out for "a couple seconds." When she came to, Sergie was standing in front of her. S.S. said that her shirt had been removed, but that she was still wearing her pants. S.S. also testified that she was "holding onto" her pants, but that she did not remember why. S.S. testified that she told Sergie to "bring it on" in hopes that the "reverse psychology" would make Sergie stop.

Officers Dan Pasquariello and Kenneth Brockman arrived at A.S.'s residence at about 6:30 a.m., but Sergie was no longer present. After interviewing A.S., K.S., and S.S., the officers left to look for Sergie. They found him walking down a nearby street.

Sergie was "evasive" and "uncooperative." Officer Brockman told Sergie that he was under arrest. Sergie sat down on the ground and refused to stand. The officers lifted him up and walked him to the patrol car. When the officers searched Sergie, he made vulgar comments about Officer Brockman's wife. When the officers tried to put Sergie in the patrol car, he struggled with the officers and kicked Officer Pasquariello several times.

The jury found Sergie guilty on all counts. Sergie appeals.

*Sergie's challenges to the attempted sexual assault jury instruction*

■ At trial, Sergie proposed a jury instruction on the elements of attempted first-degree sexual assault. Under this proposed instruction, the jury could not convict Sergie of that offense unless it found both that he intended to engage in sexual penetration of S.S., and that he "intended the sexual penetration to be non-consensual."

Superior Court Judge Fred Torrisi disagreed with the proposed instruction's description of the second element. He ruled that "recklessly," not "intentionally," was the culpable mental state that applied to this element of the crime (the circumstance that the sexual penetration occurred without the victim's consent). Judge Torrisi therefore rejected Sergie's proposed jury instruction and instead gave an instruction modeled on the pattern jury instruction for attempted first-degree sexual assault. That instruction told the jurors that to convict Sergie they had to find that he "intended to engage in sexual penetration with another person without regard to that person's lack of consent."

On appeal, Sergie renews his argument that "intentionally" is the culpable mental state that applies to disregard of the victim's consent.

■ Sergie acknowledges that to prove the completed crime of first-degree sexual assault, the State is required to establish that the defendant (1) knowingly engaged in sexual intercourse and (2) recklessly disregarded the victim's lack of consent to that intercourse.[5] That is, "knowingly" is the culpable mental state that applies to the conduct element of sexual penetration, and "recklessly" is the culpable mental state that applies to the circumstance of disregard of the victim's lack of consent.[6]

However, Sergie argues that different culpable mental states apply to both the conduct and circumstance elements of attempted first-degree sexual assault. To support this claim, he relies on AS 11.31.100(a), the statute defining criminal attempt:

A person is guilty of an attempt to commit a crime if, with intent to commit a crime,

---

**5.** *Reynolds v. State*, 664 P.2d 621, 623–25 (Alaska App.1983).

**6.** *Id.;* AS 11.81.610(b)(2).

the person engages in conduct which constitutes a substantial step toward commission of that crime.

The parties do not dispute that, under this statute, a defendant cannot be convicted of attempted first-degree sexual assault unless the State proves that the defendant *intended* to commit the target crime of first-degree sexual assault. But Sergie argues that "the defendant cannot intend to commit sexual assault unless he intends to disregard lack of consent, for lack of consent is an essential element" of that offense. Sergie cites no authority on point, instead asserting in conclusory terms that the "intentionally" culpable mental state applies to all essential elements of the offense.

■ We find no merit to this claim. A person is guilty of attempted first-degree sexual assault if he intends to commit the target crime—in other words, if he intends to engage in sexual penetration with reckless disregard to the victim's consent.[7] As explained by the drafters of the Model Penal Code, when a person is charged with criminal attempt, "[t]he requirement of purpose extends to the conduct of the actor and to the results that his conduct causes, but his purpose need not encompass all of the circumstances included in the formal definition of the substantive offense."[8] For instance, even if an essential element of the offense of burglary is proof that the breaking and entering occurred at night, the government need not show that the defendant intended the circumstance that the offense occur at

night.[9] Furthermore, to be guilty of attempt, a defendant need not intend that his conduct be criminal; he must simply "have as his affirmative objective engaging in conduct that the criminal law denominates as criminal."[10] The drafters of the Model Penal Code explained the policy behind this approach as follows:

> The judgment is thus that if the defendant manifests a purpose to engage in the type of conduct or to cause the type of result that is forbidden by the criminal law, he has sufficiently exhibited his dangerousness to justify the imposition of criminal sanctions, so long as he otherwise acts with the kind of culpability that is sufficient for the completed offense. The objective is to select out those elements of the completed crime that, if the defendant desires to bring them about, indicate with clarity that he poses the type of danger to society that the substantive offense is designed to prevent.[11]

This approach is compatible with our analysis in *Riley v. State*.[12] Riley and his cohort were each charged with two counts of first-degree assault both as a principal and as an accomplice to the other, for recklessly shooting at a group of people and causing serious physical injury to two of the victims.[13] The State could not prove which defendant's firearm wounded the two seriously injured victims, and the jury convicted Riley as an accomplice on both counts.[14] To prove accomplice liability, the State had to prove that Riley aided or abetted his cohort in planning

---

7. *Cf. Guertin v. State*, 854 P.2d 1130, 1132 (Alaska App.1993) (noting that the offense of attempted second-degree sexual assault requires proof that the defendant intended "to engage in sexual contact with another person without regard to that person's lack of consent"); *Baden v. State*, 667 P.2d 1275, 1278 (Alaska App.1983) (holding that attempted first-degree sexual assault requires proof that the defendant intended to engage in sexual penetration, and noting in dicta that "[t]he state argues convincingly that a defendant must act only 'recklessly' with regard to the lack of consent.").

8. American Law Institute, *Model Penal Code and Commentaries*, explanatory note to § 5.01, at 301 (Official Draft and Revised Comments 1985).

9. *See id.* at 301 n. 9.

10. *See id.* at 301 n. 8.

11. *Id.* at 303.

12. 60 P.3d 204 (Alaska App.2002).

13. *Id.* at 205–06.

14. *Id.*

or committing the offense, while intending "to promote or facilitate the commission of the offense." [15]

Ultimately we concluded that when the State has to prove that an accomplice intended to promote or facilitate the commission of the offense, the culpable mental state "intentionally" applies only to the conduct that the accomplice intended to occur (in Riley's case, his cohort's shooting at the group).[16] And we concluded that "recklessly," the culpable mental state that normally applied to the circumstance or result element of the crime (in Riley's case, the result that the shooting caused serious physical injury to each victim), still applied to the circumstance or result element when the State proceeded on an accomplice liability theory.[17]

We conclude that this approach applies with equal force here, and conclude that Judge Torrisi correctly rejected Sergie's proposed jury instruction. To prove that Sergie committed the offense of attempted first-degree sexual assault, the State was not required to prove that Sergie intended the circumstance that the penetration be without S.S.'s consent. If Sergie had completed the act of sexual penetration, no such showing would have been required to convict him of first-degree sexual assault.[18]

 Sergie also argues that the instruction as given was flawed because it did not explicitly specify "recklessly" as the culpable mental state for the disregard of the victim's lack of consent. But Sergie did not object to this potential flaw when the parties were discussing jury instructions with Judge Torrisi. Therefore, Sergie must show that the instruction constituted plain error—i.e., that the instruction was so patently wrong that any competent judge or attorney would have recognized the problem, and that the error in the instruction prejudiced the jury's deliberations.[19]

Sergie cannot show plain error. As explained above, the pattern jury instruction declared that the State was required to prove that Sergie "intended to engage in sexual penetration with [S.S.] without regard to [her] lack of consent." This instruction might have been clearer if the court had specified that the culpable mental state applicable to this circumstance was "recklessly." But the pattern instruction, as worded, does not plainly dispense with the requirement that the defendant acted "recklessly" with respect to the victim's lack of consent to the intended sexual penetration.

We believe that reasonable people, reading the pattern jury instruction as a whole, would interpret the phrase "without regard to that person's lack of consent" as requiring the State to prove that Sergie intended to engage in sexual penetration with S.S. whether she consented or not. Moreover, the wording of the instruction allowed Sergie's attorney to argue that Sergie should be found not guilty because he had no indication that S.S. was not consenting to his sexual advance.

In addition, we find there was no plain error because Sergie never argued that he was unaware of S.S.'s lack of consent. During the parties' discussion of the jury instructions, Sergie's attorney did not contradict Judge Torrisi's observation that there did not appear to be "much dispute about whether [S.S.] consented or not." Indeed, during the defense summation to the jury, Sergie's attorney did not discuss the element of consent (or lack of consent) at all. The defense attorney presented only two arguments: that Sergie had been too intoxicated to form the intent to sexually penetrate S.S., and that even if Sergie had formed this intent, he promptly renounced it when S.S. indicated her unwillingness to engage in sexual relations.

Based on these considerations, we conclude that the arguable imprecision in the pattern

---

**15.** *Riley,* 60 P.3d at 207; AS 11.16.110(2)(B).

**16.** *Riley,* 60 P.3d at 221.

**17.** *Id.*

**18.** *See Reynolds,* 664 P.2d at 625; AS 11.81.610(b)(2).

**19.** *See Allen v. State,* 51 P.3d 949, 958 (Alaska App.2002).

jury instruction had no effect on the litigation or decision of Sergie's case. Therefore, Sergie has failed to show plain error.

### Sufficient evidence supports Sergie's challenged convictions

■ When we consider a claim that insufficient evidence supports a conviction, we view the evidence presented at trial and the reasonable inferences arising from the evidence in the light most favorable to upholding the verdict.[20] Viewing the evidence in this manner, we decide whether a fair-minded juror exercising reasonable judgment could conclude that the State met its burden of proving guilt beyond a reasonable doubt.[21]

■ Sergie argues that his resisting arrest conviction is not supported by sufficient evidence. Alaska Statute 11.56.700 provides that "[a] person commits the crime of resisting . . . arrest if, knowing that a peace officer is making an arrest, with the intent of preventing the officer from making the arrest, the person resists . . . by . . . force." Sergie argues that he was so intoxicated at the time of his arrest, that the evidence was insufficient to show that he was capable of forming the specific intent required under AS 11.56.700—the intent to prevent the officers from arresting him. But Sergie incorrectly views the evidence in his favor, not in favor of upholding the verdict.

Officer Pasquariello testified that during the arrest Sergie was "aware of what he was doing" and that he was "coherent as to who Officer Brockman [is] and who I am and our families." Sergie was apparently able to remember Officer Brockman's wife's background, because Officer Brockman testified that Sergie made several references to her background during the arrest. Officer Brockman also testified that Sergie made comments about Thanksgiving, which Officer Brockman interpreted as referring to a contact that he had had with Sergie on Thanks-

giving several years earlier. This evidence supported the jury's conclusion that Sergie knew that the officers were arresting him and intended to resist arrest when he struggled with the officers and kicked Officer Pasquariello.

■ Sergie next argues that there was insufficient evidence to support his conviction for attempted first-degree sexual assault. Specifically, Sergie claims: (1) that the evidence showed that he was too intoxicated to have formed the intent to engage in sexual penetration with S.S.; (2) that the evidence was insufficient to show that he had intended to disregard S.S.'s consent (or that he had recklessly disregarded her lack of consent); (3) that the evidence was insufficient to show that he had taken "a substantial step towards committing the crime of sexual assault"; and (4) that the evidence showed that Sergie had renunciated his criminal intent.

Again, Sergie views the evidence in the light most favorable to himself. The evidence, when viewed in the light most favorable to upholding the verdict, established that Sergie knocked his wife to the floor, removed her shirt and bra, and then tried to remove her pants. The evidence also established that S.S. tried to keep Sergie from removing her pants by holding on to her belt loops and by kicking her legs, and that S.S. seemed "upset" while Sergie was trying to remove her pants. Therefore, in the light most favorable to upholding the verdict, reasonable jurors could conclude, beyond a reasonable doubt, that Sergie had a conscious objective to engage in sexual penetration with S.S., that Sergie took a substantial step toward that result, and that Sergie recklessly disregarded S.S.'s lack of consent. Furthermore, a reasonable juror could find that Sergie had not shown the affirmative defense that he prevented the commission of the attempted crime by voluntarily and completely renouncing his intent to sexually pen-

---

20. *Silvernail v. State,* 777 P.2d 1169, 1172 (Alaska App.1989).

21. *Id.; Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981).

etrate S.S.[22]

### Judge Torrisi properly declined to replace Sergie's attorney

■■■■ Finally, Sergie argues that Judge Torrisi should have allowed his public defender to withdraw so that the court could appoint new trial counsel. He claims that the attorney-client relationship with his public defender had "reached the point where [his counsel] was incapable of effective communication for there was no communication between counsel and his client." We review the superior court's decision to deny a defendant's request for new counsel for an abuse of discretion.[23]

■■■■ Indigent defendants are entitled to be represented by a competent attorney, but they are not entitled to "counsel of [their] choice"[24] or to "a meaningful relationship"[25] with their attorney. Furthermore, a defendant's "right to effective assistance of counsel does not encompass the right of a defendant to purposely frustrate his attorney's efforts on his behalf and then attempt to escape conviction on the basis of his own lack of cooperation."[26]

The week before trial was scheduled, Sergie asked Judge Torrisi to dismiss his court-appointed public defender and appoint a new attorney to represent him. Sergie claimed that he and his attorney suffered from a "lack of communication." Sergie's attorney told Judge Torrisi that he had traveled to Anchorage to meet with Sergie, who was in custody, but that Sergie had declined to speak with him. Sergie's attorney also noted that Sergie seemed "constantly angry." When Judge Torrisi asked Sergie why he had refused to speak with his attorney, Sergie said "[b]ecause I didn't want to. I choose not to."

Judge Torrisi refused Sergie's request for new counsel. Instead, he continued Sergie's trial date for approximately one month. He urged Sergie to cooperate with the trial attorney.

About two weeks later, Sergie's attorney filed a motion to withdraw from Sergie's case. He reported that Sergie still would not cooperate with him. The attorney stated that Sergie was "rude and abusive" during phone calls, used foul language, and threatened the attorney and his staff. Sergie also refused to discuss the case when the attorney tried to meet with Sergie in person. The attorney thought the relationship was "damaged beyond repair." Judge Torrisi denied the motion to withdraw.

The record shows that Sergie continually refused to cooperate with his attorney. Sergie's public defender twice traveled to Anchorage to meet with Sergie, but Sergie refused to cooperate. When Judge Torrisi asked Sergie why he had refused to meet with the attorney, Sergie stated that he had chosen not to. Judge Torrisi also advised Sergie in court that he needed to cooperate with his attorney. However, Sergie disregarded this advice.

Judge Torrisi was not required to appoint new counsel for Sergie merely because Sergie refused to cooperate with the counsel he already had. Judge Torrisi thus did not abuse his discretion in denying Sergie's request for new counsel.

### Conclusion

The judgment of the superior court is AFFIRMED.

**22.** *See* AS 11.31.100(c).

**23.** *Mute v. State,* 954 P.2d 1384, 1386 (Alaska App.1998).

**24.** *Id.* at 1385 (quoting *Coleman v. State,* 621 P.2d 869, 878 (Alaska 1980)).

**25.** *Id.* (quoting *Monroe v. State,* 752 P.2d 1017, 1020 (Alaska App.1988)).

**26.** *Coleman,* 621 P.2d at 881.