**John R. WALSH, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–8805, A–8965.**

Court of Appeals of Alaska.

April 28, 2006.

Karla Taylor–Welch, Assistant Public Advocate, Fairbanks, and Joshua Fink, Public ·Advocate, Anchorage, for the Appellant.

W.H. Hawley and Douglas Kossler, Assistant Attorneys General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

A jury convicted John R. Walsh of first-degree vehicle theft, driving under the influence, refusal to submit to a chemical test, leaving the scene of an accident, resisting arrest, and driving while his license was suspended.[1]

Walsh argues that the superior court failed to address his request to change his appointed attorney. But we conclude that the superior court properly addressed the complaints Walsh raised about his attorney before and during trial.

Superior Court Judge Richard D. Savell sentenced Walsh to 10 years with 4 years and 310 days suspended, a net 5 years and 55 days to serve. Walsh raises several objections to his composite sentence including claims that Judge Savell's findings do not support the sentence. We reject the bulk of Walsh's arguments. But, as the State concedes, the sentence Judge Savell imposed for leaving the scene of an accident, a net 120 days to serve, is not authorized. The maximum allowable sentence for this offense is 90 days of imprisonment.[2] Judge Savell must resentence Walsh on this count. Because Judge Savell will resentence Walsh, he will have the opportunity to enter findings that address Walsh's remaining objections.

*Background facts and proceedings*

On September 13, 2003, Walsh took a Home Depot delivery truck without permission from the Home Depot parking lot in Fairbanks. Walsh drove onto the Mitchell Expressway, where he collided with a pickup truck and kept going, causing several vehicles to take evasive action.

Walsh drove to the Fred Meyer West parking lot, where he collided with three parked cars. Walsh walked into the Fred Meyer building.

Inside, Walsh put some items in a shopping cart while snacking on food he had picked up in the deli and bakery sections. Walsh left the store with the shopping cart, staggering as he walked.

Outside the store, Alaska State Trooper Rachel Foster approached Walsh, identified herself, and asked Walsh for his name. Walsh introduced himself as "Trooper Walsh."

Trooper Foster observed that Walsh smelled of alcohol, had watery bloodshot eyes, and was not in control of his motor functions. Trooper Foster attempted to take Walsh into custody, but he kept flailing his arms around and kicking his legs. Even though Foster told Walsh that he was under arrest, Walsh continued to struggle. Other troopers arrived to assist, and Walsh was handcuffed and transported to the trooper post for a DUI investigation. Walsh declined to perform sobriety tests. The troopers read Walsh the implied consent warning and gave him an opportunity to submit to a breath test. He refused.

The grand jury charged Walsh with one count of first-degree vehicle theft. The district attorney filed an information charging six misdemeanor counts: driving under the influence; refusal to submit to a chemical test; leaving the scene of an accident; resisting or interfering with arrest; concealment

---

1. AS 11.46.360(a)(1), AS 28.35.030(a)(1), AS 28.35.032(a), AS 28.35.050(b), AS 11.56.700(a)(1), and AS 28.15.291(a)(1), respectively.

2. AS 28.35.050; AS 28.40.050(b).

of merchandise;[3] and driving while license canceled, suspended, or revoked.

*Walsh's claim that his attorney should have been replaced*

The court appointed the Public Defender Agency to represent Walsh. Walsh's attorney calendared a change of plea hearing on November 19, 2003, but at that hearing, Walsh stated that he had not "reached an agreement" on the plea bargain that his attorney had negotiated with the State. He said that he "was told that [he was] looking at three years here and if [he didn't] go along with it then [he was] going to get five years." He further stated that he wanted more time because there was "just some minor stuff in there that we didn't get finished with on time." The court continued the hearing for two days, at which point Walsh said he wanted to go to trial.

At calendar call on December 4, 2003, Walsh told Judge Savell, "We've had a slight conflict of interest. I'm asking for a new counsel." Judge Savell told Walsh that he should discuss the issue with his attorney and that if it was an ethical problem, the attorney was obligated to inform the court.

> *The Court:* You have the right to court-appointed counsel. You do not have the right to counsel of your choosing. If, by conflict of interest, you mean there's something that fits under the code of ethics, you [should] bring that to your lawyer's attention, and he's obligated to bring it to my attention.

The case went to trial without Walsh or his attorney returning to this issue.

On December 9, during the trial, Walsh personally moved for a mistrial, complaining about some of his trial attorney's tactics. Judge Savell did not grant a mistrial and told Walsh that his complaints about the quality of his attorney's performance would be addressed at another time and place.

Walsh argues that his conviction should be reversed because Judge Savell's responses to his complaints about his attorney were insufficient. Walsh contends that, "while case law does not specifically hold that the court must examine the reason behind a defendant's request for new counsel," the need for inquiry is implicit in that case law.

■ Walsh argues that a trial court must inquire when the court learns that there has been a breakdown in the attorney-client relationship. An indigent defendant with an appointed attorney is not entitled to counsel of his or her choice.[4] But when there has been a breakdown in the attorney-client relationship, a defendant may be entitled to a change in representation.[5] Case law implies that a court has an obligation to inquire when presented with a substantial claim that an appointed attorney must withdraw.[6]

■ But at calendar call, Walsh only contended that a "slight conflict" existed between himself and his attorney. Judge Savell responded reasonably to this report. He told Walsh to discuss the issue with his attorney and advised him that the attorney was obliged to bring any ethical issue to the court's attention. Viewed objectively, Walsh's calendar-call complaint did not show a breakdown in the attorney-client relationship, a disqualifying conflict of interest, or a failure in communication that required further action by Judge Savell beyond the direction he offered.

■ During the second day of trial, Walsh personally moved for a mistrial. This time, Walsh provided more explicit criticisms of his attorney.

> *Walsh:* I need a mistrial declared in this case for the following reasons. [My attorney] projected guilt to the jury without

---

3. AS 11.46.220(a)(1) & (c)(3).

4. *See Coleman v. State,* 621 P.2d 869, 878 (Alaska 1980).

5. *See Moore v. State,* 123 P.3d 1081, 1088 (Alaska App.2005); *Love v. State,* 630 P.2d 21, 25 (Alaska App.1981). *See also United States v. Lott,* 310 F.3d 1231, 1249 (10th Cir.2002).

6. *See Coleman,* 621 P.2d at 878–79 ("[T]he denial of Coleman's motion for private appointed counsel ... was not error, given [the superior court judge's] examination of Coleman and his appointed public defender regarding whether the attorney could properly represent Coleman."); *Moore,* 123 P.3d at 1088–89; *Mute v. State,* 954 P.2d 1384, 1385 (Alaska App.1998).

prior consent when he told them I was shoplifting, which is false. He has never discussed any trial strategy with me. The alleged witness, Danielle Simmons that was added to the state's witness list without argument from a lawyer is, to my knowledge, not common practice. I also have never seen Mrs. Simmons' name as a witness in the case in either the grand jury tapes, police reports, or I didn't get anything else.

All due process was denied, constitutional rights trampled. Furthermore, there's been a conflict of interest with Mr. Spiers and myself from the beginning stemming from an prior case. He has filed no motions on my behalf for suppression, evidentiary, conflict or anything as I suggested throughout my case, but rather has dismissed me as a jailhouse lawyer.

I have never received all discovery or exculpatory evidence in my case as requested to my knowledge. Mr. Spiers has only seen me twice for 15 minutes and threatened me with six to 13 years if I didn't take his plea deal.

Judge Savell denied Walsh's motion for a mistrial. He responded to Walsh's complaints regarding his attorney's performance as follows:

*The Court:* You have a lawyer in this case. There are certain decisions that are entrusted to lawyers under the law. The lawyers make tactical and strategic decisions during a trial, and there are certain decisions that are only the defendant's. If and when you continue to have a complaint about [your attorney's] performance, that will be examined at another time and in another place.... I could explain all the reasons in answer to all of your complaints but do not feel this is the right time or place[.]

■ The State argues that this court should not treat the statements Walsh made on the second day of trial as a second request for new counsel because, instead of asking for a substitution of counsel, Walsh moved for a mistrial. As the State points out, this court normally does not address new arguments or theories on appeal that were not raised in the superior court.[7] The State argues that Walsh is attempting to raise a new claim on appeal—that Judge Savell should have appointed a new attorney based on Walsh's mistrial motion.

But it is apparent from the content of Walsh's complaint that he was objecting to his attorney's performance. And, in addition to denying Walsh's mistrial motion, Judge Savell addressed the substance of Walsh's complaint about his attorney. We therefore conclude that Walsh preserved this point on appeal.

There is substantial authority holding that a *defendant's request to replace an attorney* is untimely if it is made just before or during trial.[8] We have never been asked to adopt or reject this line of cases. Indeed, in prior cases, we have examined trial judges' rulings on defendants' complaints about their attorneys and defendants' requests for new counsel, even when those requests were made on the eve of trial.[9]

But even assuming that Walsh's complaint about his attorney's performance and strategy should not have been rejected on grounds of timeliness, we have nevertheless cautioned judges to be hesitant about injecting themselves into the attorney-client relationship when presented with complaints about a de-

---

7. *See, e.g., Price v. Eastham,* 128 P.3d 725, 731 (Alaska 2006); *Conkey v. State,* 113 P.3d 1235, 1237 n. 6 (Alaska 2005); *Gates v. Tenakee Springs,* 822 P.2d 455, 460 (Alaska 1991).

8. *See United States v. Trujillo,* 376 F.3d 593, 606–07 (6th Cir.2004) (motion for substitution of counsel made three days before trial was untimely); *United States v. Reevey,* 364 F.3d 151, 157 (4th Cir.2004) (request for new counsel made on the first day of trial was untimely); *United States v. Franklin,* 321 F.3d 1231, 1238–39 (9th Cir. 2003) (defendant's request for new counsel made ten days before trial and attorney's motion to withdraw made six days before trial were untimely); *United States v. Gonzalez,* 800 F.2d 895, 898 (9th Cir.1986) (motion made on second day of trial was untimely); *United States v. McClendon,* 782 F.2d 785, 789 (9th Cir.1986) (motion to substitute made on first day of trial was untimely); *Hudson v. Rushen,* 686 F.2d 826, 831 (9th Cir.1982) (motion to substitute made at the close of the prosecution's case was untimely).

9. *See, e.g., Mute,* 954 P.2d at 1385.

fense attorney's performance. In *Mute v. State*,[10] we stated that

> absent extraordinary circumstances, [the trial judge] was rightfully hesitant to enter into an extended examination of [the attorney's] view of the case and his trial strategy, or to otherwise insinuate herself as referee in the attorney-client relationship. [The judge] therefore did not abuse her discretion when she denied Mute's motion to discharge [his attorney].[11]

Here, Judge Savell responded to Walsh's complaints about the adequacy of his attorney's performance by telling Walsh that these complaints could be addressed at a later time. Although Judge Savell did not describe the details of this later proceeding to Walsh, it is clear that if Walsh continued to believe that his attorney's performance was not competent, Walsh would be entitled to pursue an application for post-conviction relief or a motion for a new trial.

Judge Savell did not abuse his discretion in dealing with Walsh's complaints in this fashion. Our prior decisions on this issue clearly suggest that a trial judge who is confronted by challenges to a defense attorney's performance on the eve of trial, or during trial, should not interrupt the trial to conduct an investigation of the defendant's complaints. The only cases in which a trial judge is required to take precautionary or curative action are when there is reason to believe the attorney-client relationship has deteriorated to the point where the attorney is incapable of effective communication with the defendant or objective decision-making about the case.[12]

Here, Walsh's mistrial request did not present Judge Savell with reason to believe that Walsh's relationship with his attorney had deteriorated to this point. Walsh's criticisms of his attorney's decisions and performance did not indicate that his attorney was incapable of effective communication

with Walsh or that his attorney could not make objective decisions about the case. Accordingly, Judge Savell did not abuse his discretion when he declined to interrupt Walsh's trial to investigate these claims.

### *Walsh's attack on the length of his sentence*

■ Judge Savell sentenced Walsh to 10 years with 4 years and 310 days suspended, a net 5 years and 55 days to serve. Walsh raises several objections to his composite sentence. We reject the bulk of Walsh's arguments. But, as the State concedes, the sentence Judge Savell imposed for leaving the scene of an accident, 1 year with 245 days suspended, a net 120 days to serve, is not authorized. The maximum allowable sentence for this offense is 90 days of imprisonment.[13] Judge Savell must resentence Walsh on this count. Because Judge Savell will resentence Walsh, he will have the opportunity to enter findings that address Walsh's remaining objections.

As a second felony offender, Walsh was subject to a 2-year presumptive term for vehicle theft.[14] The State proposed three aggravating factors under AS 12.55.155(c): (c)(6), that Walsh's conduct created a risk of imminent physical injury to three or more persons; (c)(8), that the defendant's prior criminal history includes conduct involving aggravated or repeated instances of assaultive behavior; and (c)(21), that the defendant has a criminal history of repeated instances of conduct violative of criminal laws, whether punishable as felonies or misdemeanors, similar in nature to the offense for which the defendant is being sentenced. Walsh conceded those aggravators applied. At sentencing, Judge Savell asked Walsh's attorney, "In this case, for me to exceed a five-year sentence, I must find that that excess is necessary to protect the public and tie that in

10.   954 P.2d 1384.

11.   *Id.* at 1385–86.

12.   *Mute*, 954 P.2d at 1385–86. *See also Gardner v. State,* Alaska App. Memorandum Opinion and Judgment No. 5064 at 9–11 (March 29, 2006), 2006 WL 829758 at * 4–6 (Mannheimer, J., con-

curring); 3 Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, *Criminal Procedure* § 11.4(b), at 554 (2nd ed.1999).

13.   AS 28.35.050; AS 28.40.050(b).

14.   AS 12.55.125(e)(1).

with a finding of dangerousness; isn't that right ... ?"

Judge Savell was apparently referring to the *Neal–Mutschler* rule, a sentencing rule announced by the Alaska Supreme Court that provides a sentencing judge should not impose consecutive sentences that total more than the maximum sentence for the defendant's most serious offense unless the sentencing judge expressly finds that such a sentence is necessary to protect the public.[15] Moreover, while he acknowledged that Walsh was an alcoholic with a criminal record (Walsh had a criminal history of over forty-five prior criminal convictions), Judge Savell expressed hope that Walsh could be rehabilitated. Judge Savell imposed a composite 10–year term with 4 years and 310 days suspended, a net 5 years and 55 days to serve.

◼ Walsh argues that his sentence is excessive because Judge Savell imposed this sentence without making the express findings required by the *Neal–Mutschler* rule and the rule from *Farmer v. State*.[16] The State points out that Judge Savell's expressed awareness of the rule indicates that his failure to make an express finding was an oversight.

Judge Savell began his sentencing remarks as follows: "Case law indicates that I must make certain findings if I'm going to impose a sentence that is greater than the maximum sentence for the most serious crime of which an offender is committed [sic]. In this case, for me to exceed a five-year sentence, I must find that that excess is necessary to protect the public and tie that in with a finding of dangerousness[.]" He also explained that he was required to "protect the public and isolate Mr. Walsh to the degree that is necessary."

Like the offenders in *Powell v. State*[17] and *Waters v. State*,[18] cases in which we upheld a composite term exceeding the maximum term for the defendant's most serious offense despite the lack of an express *Neal–Mutschler* finding, Walsh is a mature offender with a long criminal record and a significant substance abuse problem. Although the record in this case is sufficient to support a composite term for Walsh in excess of the 5–year maximum for vehicle theft, because we must remand the case for resentencing, as we explain below, Judge Savell will have the opportunity to enter an express *Neal–Mutschler* findings if he elects to re-impose a composite term in excess of 5 years.

Walsh points out that Judge Savell did not enter express findings to satisfy the *Farmer* rule. The State argues that this requirement is not necessary because if a sentencing judge satisfies the *Neal–Mutschler* rule, those findings implicitly satisfy the *Farmer* rule. The State's argument has merit. But here, a *Neal–Mutschler* finding is not necessary to satisfy *Farmer*. In *Randall v. State*,[19] we held that, where the sentencing judge was authorized to exceed the presumptive term because he found aggravating factors, these aggravating factors constituted the "good cause" required by *Farmer* to support a composite sentence exceeding that presumptive term.[20] Thus, the aggravating factors conceded by Walsh constituted good cause for exceeding the presumptive term for vehicle theft.

The State concedes that Judge Savell erred when he imposed 1 year with 245 days suspended for leaving the scene of an accident. The maximum penalty for this offense is 90 days imprisonment.[21]

The State points out, however, that under *Allain v. State*,[22] the superior court is authorized to impose the same composite term

15. See *Neal v. State*, 628 P.2d 19, 21 (Alaska 1981); *Mutschler v. State*, 560 P.2d 377, 381 (Alaska 1977).

16. 746 P.2d 1300, 1301 (Alaska App.1987) (when an offender is sentenced for multiple crimes, the presumptive term for the most serious offense is a benchmark that should not be exceeded without a "good reason").

17. 88 P.3d 532 (Alaska App.2004).

18. 64 P.3d 169 (Alaska App.2003).

19. 44 P.3d 984 (Alaska App.2002).

20. *Id.* at 985.

21. AS 28.40.050(b).

22. 810 P.2d 1019 (Alaska App.1991).

on remand.[23] Judge Savell indicated in his sentencing remarks that he knew "where [he] want[ed] to go" with the composite sentence, apparently finding 10 years with 4 years and 310 days suspended appropriate as a total sentence. Because he fashioned a composite term appropriate for the totality of Walsh's conduct, the court may resentence him on remand to a term that does not exceed the composite sentence originally imposed in this case.[24]

*Walsh's arguments based on Blakely v. Washington*

While this appeal was pending, Walsh filed a motion under Alaska Criminal Rule 35(a), seeking correction of an allegedly illegal sentence. This motion concerned the legality of the sentence Walsh received for first-degree vehicle theft. Walsh contended that his sentence was illegal under *Blakely v. Washington*[25] because (1) Walsh was subject to a 2-year presumptive term of imprisonment for this offense, (2) Judge Savell relied on various aggravators codified in AS 12.55.155(c) as authority to impose a sentence exceeding this 2-year presumptive term, and (3) Judge Savell decided these aggravators by himself, without referring these matters to a jury.

Judge Savell denied Walsh's Rule 35(a) motion, and Walsh now raises this same argument on appeal in File No. A-8965.

█ The State argues that Judge Savell was entitled to deny Walsh's motion on purely procedural grounds. The State takes the position that even if a sentence is imposed in violation of *Blakely,* the sentence is not "illegal"—and, thus, a defendant is not entitled to raise a *Blakely* claim in a motion under Rule 35(a) to correct an illegal sentence.

The State acknowledges that, in *Paige v. State,*[26] this Court instructed the defendant to bring his *Blakely* claim as either a Rule 35(a) motion or an application for post-conviction relief.[27] But, the State contends that this was an "erroneous dictum" and the sole vehicle for raising a post-sentencing *Blakely* claim is an application for post-conviction relief.

In *Bishop v. Anchorage,*[28] this Court held that Criminal Rule 35(a) employs the term "illegal sentence" in a narrow sense; the term refers only to sentences that "the judgment of conviction did not authorize." [29] We offered three examples of illegal sentences: (1) "a sentence that [is] contrary to the applicable statute"; (2) "a written judgment not conforming to the oral pronouncement of sentence"; and (3) "a sentence that is ambiguous with respect to the time and manner in which it is to be served." [30]

The State suggests that, because Walsh's attack on his vehicle theft sentence does not fall within any of these categories, it is not an "illegal sentence" for purposes of Criminal Rule 35(a). The State further argues that a *Blakely* claim challenges the *manner* in which a defendant's sentence is imposed, rather than the legality of the sentence itself.[31]

We find the State's arguments unconvincing. Although our decision in *Bishop* lists three types of sentences that may be challenged as "illegal" under Criminal Rule 35(a), this list is not exhaustive. Instead, the guiding principle (as stated in *Bishop* ) is whether the defendant asserts that the court has imposed a "sentence [that] the judgment of conviction did not authorize."

Under Alaska's pre-2005 presumptive sentencing laws, Judge Savell was not authorized to exceed the 2-year presumptive term that applied to Walsh's offense unless the State proved aggravating factors or extraor-

---

**23.** *Id.* at 1022.

**24.** *Id.*

**25.** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**26.** 115 P.3d 1244 (Alaska App.2005).

**27.** *Id.* at 1248.

**28.** 685 P.2d 103 (Alaska App.1984).

**29.** *Id.* at 105.

**30.** *Id.* (internal citations and quotations omitted).

**31.** *See id.* at 105 n. 3.

dinary circumstances.[32] *Blakely* stands for the proposition that "when a sentencing judge has no authority to exceed a specified sentencing ceiling unless particular aggravating factors are proved, the defendant has a right to demand a jury trial on those aggravating factors."[33]

Therefore, a sentence imposed in violation of *Blakely*—that is, a sentence greater than would be authorized by the jury's verdict alone—is an "illegal sentence" for purposes of Criminal Rule 35(a). For this reason, Walsh was entitled to pursue his *Blakely* claim under Criminal Rule 35(a).

We now turn to the merits of Walsh's *Blakely* argument.

As we explained above, the State argued that three aggravating factors applied to Walsh's case, and Walsh conceded all three of these factors.

■ The State's proof of aggravators (c)(21) and (c)(8) rested on Walsh's uncontested prior criminal convictions. Under these circumstances, both aggravators fell within the *Blakely* exception for a defendant's prior convictions. Thus, Judge Savell was not obligated to submit these two aggravators to a jury.[34]

■ This leaves aggravator (c)(6)—the allegation that Walsh's conduct placed three or more persons at risk of imminent physical injury. It was plain error, under *Blakely*, for Judge Savell not to submit this aggravator to a jury.

We nevertheless conclude that this error was harmless beyond a reasonable doubt.[35] When Walsh's underlying criminal case was litigated, Walsh never disputed that the driver of the stolen vehicle engaged in erratic and dangerous driving that put many people at risk. Instead, Walsh contended that he had not been that driver.

The jury convicted Walsh of vehicle theft, driving under the influence, and driving with a suspended license. In other words, the jury found beyond a reasonable doubt that Walsh had been driving the stolen vehicle.

Given the jury's verdicts, and given the way in which Walsh litigated this case, we conclude that the error in failing to submit aggravator (c)(6) to a jury was harmless beyond a reasonable doubt. Or, stated another way, given the jury's finding that Walsh was the driver of the stolen vehicle, there is no reasonable possibility that a jury would find in Walsh's favor on the question of whether his driving endangered three or more persons.

## Conclusion.

For the reasons explained here, we AFFIRM Walsh's convictions and we reject most of his attacks on his sentences. However, we VACATE the sentence that Walsh received for leaving the scene of an accident, and we remand Walsh's case to the superior court for resentencing, consistent with this opinion.

We do not retain jurisdiction of this case.

---

**32.** *See Haag v. State,* 117 P.3d 775, 782 (Alaska App.2005).

**33.** *Id.* at 782 (internal citations omitted).

**34.** *See Grohs v. State,* 118 P.3d 1080, 1084 (Alaska App.2005) (holding that when aggravator (c)(21) is based on a defendant's uncontested prior convictions, the *Blakely* exception for prior convictions applies, and the aggravator need not be submitted to a jury); *Milligrock v. State,* 118 P.3d 11, 16 (same holding with respect to aggravator (c)(8)).

**35.** See *United States v. Cotton,* 535 U.S. 625, 633–34, 122 S.Ct. 1781, 1786–87, 152 L.Ed.2d 860 (2002), and *Johnson v. United States,* 520 U.S. 461, 466–68, 117 S.Ct. 1544, 1548–49, 137 L.Ed.2d 718 (1997), both holding that a denial of the right to jury trial does not require reversal of the defendant's conviction if the error is harmless beyond a reasonable doubt. We discussed both of these cases in *Ned v. State,* 119 P.3d 438, 443–44 (Alaska App.2005).