**Sean R. BEATTY, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A-7986.

Court of Appeals of Alaska.

Aug. 9, 2002.

---

⚖═27(7)

John M. Murtagh, Anchorage, for Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

A jury convicted Sean R. Beatty of conspiracy to commit robbery in the first degree[1] and robbery in the first degree.[2] Beatty appeals, arguing Superior Court Judge Larry D. Card erred in rejecting the defense's proposed jury instructions on the lesser-included offense of attempted robbery in the first degree. We conclude that Judge Card did not err in refusing to give the instruction because Beatty failed to present sufficient evidence to require the court to give such an instruction.

### Facts and proceedings

In December 1999, a grand jury indicted Beatty for conspiracy to commit robbery in the first degree and robbery in the first degree. The state's theory at trial was that late in the evening of September 15, 1999, seven friends conspired to rob Matthew Fox, a local drug dealer. The conspirators were Sean R. Beatty, Adam A. Alirez, Elijah M. Lindsey, Torey J. Tuttle, Shawn Roe, Jerry

C. Lee, and Justin W. Dufour. Beatty put the conspiracy into action by arranging a meeting with Fox under the guise that Beatty was going to pay off an outstanding debt. Fox agreed to meet Beatty at a local carwash in Anchorage at 3:00 the following morning (September 16, 1999).

According to the state, the plan was that Beatty and Tuttle would meet Fox while the others hid in the woods out of sight. At a pre-arranged signal, the others would rush out of the woods and surround Fox. Once surrounded, Beatty or Tuttle would order Fox to turn over any money he had. The rumor on the street was that Fox would be carrying a large amount of money on him.

Fox showed up at the carwash with a friend, Daniel Singer. While Beatty and Fox were discussing the debt, Beatty looked at and unloaded Fox's pistol. The meeting between Beatty and Fox became heated and someone sounded a car horn (presumably the signal to initiate the robbery). As several individuals ran out of the woods, Fox and Singer jumped into their car and sped away. As they fled, someone shot at and hit Fox's vehicle, blowing out two of his tires. Police found another bullet in a vacuum island in the carwash parking lot.

Several blocks away, Anchorage Police Officers Gerrard Asselin and Gary Martin heard multiple gunshots. As they raced towards the area, they spotted two young adults running down the street. They stopped the individuals, later identified as Lindsey and Alirez, and questioned them about the shooting. Both Lindsey and Alirez denied any knowledge of the shooting but gave inconsistent stories of their whereabouts to the police. After questioning Lindsey and Alirez, Officers Asselin and Martin released them.

Anchorage Police Officer Doyle Warren also responded to the area and saw four young men parked at the carwash in a white Suburban. He contacted the individuals and identified them as Beatty, Tuttle, Roe, and Dufour. Officer Warren searched the vehicle, found nothing suspicious or incriminating, and released them.

---

**1.** AS 11.31.120(a)(1); AS 11.41.500(a)(1).

**2.** AS 11.41.500(a)(1).

Prior to Beatty's trial, Fox was arrested on an unrelated charge. Detective John Vandervalk interviewed Fox and convinced him to call Beatty and discuss the incident while Det. Vandervalk surreptitiously recorded the conversation pursuant a *Glass* warrant. During the call, Beatty initially denied his involvement but ultimately made several incriminating statements including admitting knowledge of the planned robbery and agreeing to pay for the two tires that had been shot out during the robbery.

At trial, the state introduced the *Glass* recording of Fox's and Beatty's conversation and several interviews that Det. Vandervalk had with Beatty. Alirez, the only participant to testify at trial, testified that he had no knowledge of a conspiracy to rob Fox and only hid in the woods with the others "in case a fight broke out." He stated that when Fox showed up "nothing happened." According to Alirez, only after he left did he hear gunshots coming from the carwash.

In response, the state introduced Alirez's earlier interview with Det. Vandervalk as a prior inconsistent statement. In that interview, Alirez described how the planned robbery evolved and implicated Beatty. He stated Beatty was the one who called Fox and convinced him to come to the carwash and that the signal to initiate the robbery was a honk from the car horn. He stated that he never saw what happened during the actual robbery and told Det. Vandervalk that he left the carwash before the robbery began.

Beatty requested Judge Card instruct the jury on the lesser-included offense of attempted robbery in the first degree. Beatty's theory was that the jury could find Beatty and his co-conspirators had planned to rob Fox and had taken a substantial step to accomplish the robbery but Beatty and his co-conspirators never completed the robbery because they did not confront Fox and demand property. The state argued that the robbery statute had been broadened by the legislature to include attempts and therefore the offense of attempted robbery does not exists under the Alaska criminal code. Judge Card accepted this argument and de-

nied Beatty's proposed attempted robbery instruction.

The jury convicted Beatty of conspiracy to commit robbery in the first degree and robbery in the first degree. Judge Card sentenced Beatty to four years with two suspended for conspiracy to commit robbery and seven years with two years suspended for the robbery, to run concurrent with the conspiracy sentence.

*Under the Alaska criminal code, attempted robbery in the first degree is an offense*

Alaska Statute 11.41.510(a) defines second-degree robbery:

A person commits the crime of robbery in the second degree if, in the course of taking or attempting to take property from the immediate presence and control of another, the person uses or threatens the immediate use of force upon any person with the intent to

(1) prevent or overcome resistance to the taking of the property or the retention of property after taking; or

(2) compel any person to deliver the property or engage in other conduct which might aid in the taking of the property.

Second-degree robbery is elevated to first-degree robbery if, during the robbery, the person is (1) armed or represents that he is armed with a deadly weapon, (2) uses or attempts to use a dangerous instrument, or (3) causes or attempts to cause serious physical injury to another.[3]

Thus, for the jury to convict Beatty of first-degree robbery, the jury was required to find:

(1) that Beatty or an accomplice took or attempted to take property from the immediate presence and control of Fox;

(2) that Beatty or an accomplice used or threatened immediate use of force upon Fox;

(3) with the intent to prevent or overcome resistance from Fox or compel Fox to deliver the property; and

---

**3.** AS 11.41.500(a).

(4) that Beatty or an accomplice was armed with a deadly weapon or represented by words that they were armed with a deadly weapon.

The Alaska criminal code went into effect in 1980. Before the revised criminal code, "attempt" was not included within the definition of robbery.[4] Instead, robbery required the defendant to steal or take property.[5] If a defendant failed to complete the theft during the robbery, he was guilty of assault with the intent to commit robbery or attempted robbery.[6]

Under the revised code, robbery, assault with the intent to commit robbery, and some attempted robberies were all incorporated into one general inclusive robbery statute.[7] The commentary to the Alaska Revised Criminal Code indicates that the additional language "attempting to take" was intended to criminalize both a successful and unsuccessful robbery. The legislative purpose behind the revised statute was to emphasize the physical danger associated with robbery, not the theft of property:

> The revised Code does not require, for either degree of robbery, that property actually be taken from the victim. Under existing law, robbery is only committed if the robber "steals or takes anything of value", AS 1[1].15.240. If the would-be robber fails to acquire any property, he is guilty of Assault with Intent to Commit Robbery, AS 11.15.160, or simply Attempted Robbery. This approach emphasizes the property aspects of the crime and treats it as an aggravated form of theft. If, however, the primary concern is with the physical danger to the victim and his difficulty in protecting himself from sudden attacks against his person, then the actual taking of property becomes less important. The Revised Code emphasizes the person, rather than the property, aspects of the offense.[8]

But the commentary does not suggest that the additional language was to eliminate all attempted robberies. The legislative intent behind the revised robbery statute was to criminalize unsuccessful takings of property to the same extent as successful takings. The legislature was not trying to criminalize anticipatory acts in preparation of a robbery under the general robbery statute. This interpretation is consistent with AS 11.41.510's language. The current statute reads:

> [I]n the course of taking or attempting to take property from the immediate presence and control of another, the person uses or threatens the immediate use of force[.] [9]

The phrase "immediate presence and control" seems to relate to property, as only property can be within a person's "presence and control." The phrase "uses or threatens to the immediate use of force," on the other hand, seems to be independent of "taking or attempting to take." If "attempting to take" only relates to property, and not to the use of or the threatened use of force, then it appears that a person could still face criminal liability under the general attempt statute for the acts that led up to the robbery before he used or threatened the immediate use of force to try to obtain property from a other's immediate presence and control.

■ Accordingly, the general concept of attempt as defined in AS 11.31.100(a) must govern. That is, a person is guilty of attempt if, with the intent to commit a crime, the person takes a "substantial step toward the commission of that crime." [10] The attempt statute is intended to encompass a wide-range of acts beyond mere preparation. Examples include: lying in wait, searching for or following the potential victim, enticing the victim to go a contemplated place, possessing materials for the commission of the

---

**4.** *See* former AS 11.15.240 (repealed 1978).

**5.** *See* former AS 11.15.240 (repealed 1978).

**6.** *See* former AS 11.15.160 (repealed 1978); *see, e.g., Brookins v. State,* 600 P.2d 12, 14–15 (Alaska 1979).

**7.** *See* Alaska Criminal Code Revision Part II, at 81 (Tent. Draft 1977).

**8.** *Id.*

**9.** AS 11.41.510.

**10.** AS 11.31.100(a).

offense, or any overt act done towards its commission.[11]

■ The difference between attempted robbery and robbery is not whether the *theft* was successful but whether the defendant used or threatened to use force against the victim with the intent to obtain property from the victim's immediate presence and control. The statute clearly criminalizes unsuccessful robberies caused by victim resistance or lack of property. For example, a defendant who initiates a robbery is still guilty of robbery if the victim flees before the robber gains control of the property or if the victim has an "empty pocket."[12] However, a defendant is not guilty of robbery if the victim never shows up at a pre-arranged meeting place where the defendant had planned to rob him.[13] A completed robbery requires the use of force or threat of force in an attempt to take property from the immediate presence of the victim. Once a defendant uses or threatens to use force to implement the attempted taking, it is irrelevant whether the taking is successful; the offense is a completed robbery. But if the intended robbery is interrupted before the defendant's use of force or threat of force, the crime is attempted robbery.

The Model Penal Code supports this view. Both the Model Penal Code and the Alaska Criminal Code require the defendant to use or threaten to use force during the robbery.[14] According to the Model Penal Code commentary, the term "threaten" implies a purposeful conduct that must be conveyed to the victim either explicitly or implicitly.[15] It is the defendant's purposeful behavior that controls whether the threat has been communicated, not the victim's reaction.[16] Both the Model Penal Code and AS 11.41.510 focus on the defendant's intent during the robbery and not the victim's state of mind. Focusing on the defendant's purposeful behavior, as opposed to the victim's reaction, prevents a victim's overreaction elevating an offense from theft to robbery.[17]

For this reason, the Model Penal Code commentary notes that under certain circumstances (*e.g.*, where the actor does not actually threaten harm or use force), the appropriate charge will be attempted robbery, not robbery:

> If, for example, the defendant is apprehended before he reaches his robbery victim and thus before he has actually engaged in threatening conduct, proof of his purpose to engage in such conduct will justify a conviction of attempted robbery if the standards of [the general attempt provision] are met. [The general attempt provision] was drafted in large part with the offense of robbery in mind, applying as it does to one who is "lying in wait, searching for or following the contemplated victim of the crime."[18]

Therefore, under Alaska's revised criminal code, a person is guilty of attempted robbery if, with the intent to commit the robbery, the person takes a substantial step toward its commission. The crime becomes a completed robbery when "in the course of taking or attempting to take property from the immediate presence and control of another, the person uses or threatens the immediate use of force upon any person" with the intent to obtain or retain the property. It is the robber's use or threat of force that distinguishes the completed robbery from the attempt. Once force is used or threatened, a completed robbery has occurred.

*There was insufficient evidence to require Judge Card to instruct the jury on attempted robbery in the first degree*

■ Attempted robbery in the first degree is a lesser-included offense of robbery in the

11. Alaska Criminal Code Revision Part II, at 73 (Tent. Draft 1977) (citing Model Penal Code (MPC) § 5.01(2)).

12. MPC Part II, § 222.1 cmt. at 99–100 (1980).

13. *Id.* at 114–15.

14. *See* MPC Part II, § 222.1 at 96 (1980); AS 11.41.510(a).

15. MPC Part II, § 222.1 cmt. at 114–15.

16. *See id.*

17. *See id.*

18. *Id.* at 115.

first degree.[19] Therefore, if Beatty could point to some evidence to support the reasonable conclusion that he and his co-conspirators (1) intended to rob Fox but (2) never actually used force or threatened the use of force, then Judge Card was required to instruct on the lesser-included offense.[20]

The only eyewitness to testify at trial was Adam Alirez. At trial, Alirez testified that he and the others only hid in the bushes "in case a fight broke out." He denied any plan to rob Fox. According to Alirez, when Fox showed up "nothing happened." It was only after he left that Alirez heard gun shots. The state impeached Alirez with his prior statement to Det. Vandervalk. In this prior statement, Alirez outlined how the co-conspirators had planned the robbery. He stated that Beatty called Fox and convinced Fox to come to the carwash. He described how he hid in the woods and how he and the others intended to run out of the bushes and order Fox to turn over his money. He also described the gun that Tuttle had taken to the carwash to threaten Fox. In both his trial testimony and his prior statement, Alirez stated he left the carwash before the planned robbery began.

To demonstrate what happened at the carwash once Fox arrived, the state relied on the *Glass* recording of Beatty's conversation with Fox, Det. Vandervalk's interviews with Beatty, and the testimony of Officer Asselin, Officer Martin, and Alirez that they heard gunshots coming from the area of the carwash at approximately the time the planned robbery was to occur. The state also introduced an expended bullet that Officer Martin found in a vacuum at the carwash following the robbery. Beatty did not testify at trial.

In the statements to Det. Vandervalk, Beatty stated that he was in the car at the carwash with Fox and unloaded Fox's gun. He stated that after someone sounded the horn, four or five men came running out of the woods, trying to "jump [Fox] and beat [Fox] up." He stated that "Fox jump[ed] in his car and people start[ed] shootin[g] at ... shootin[g] at his car." Beatty's major de-

fenses at trial were that he had no prior knowledge of the conspiracy to rob Fox and no evidence indicated what actually happened once Fox arrived at the carwash.

On appeal, Beatty contends that the state's evidence did not clearly establish what happened at the carwash. Beatty points out that the record suggests that Fox was unaware that the purpose of any assault on him was a robbery. He argues that, under the evidence the state presented at trial, it is possible that Fox, a person who was armed and had a reputation as a drug dealer, initiated the confrontation before the co-conspirators were able to initiate the robbery. He also argues that, under the evidence the state presented at trial, it is possible that the co-conspirators did not confront Fox sufficiently for the jury to find that the co-conspirators attempted to take property from his immediate presence and control or that they managed to use or threatened to use immediate force upon him. He argues that under either of these versions of the facts, the jury could have concluded that the state did not establish that he committed robbery in the first degree but, instead, that he only committed an attempted robbery in the first degree.

But Beatty's argument relies totally on speculation. We know from the jury's verdict on the conspiracy charge that the jury found Beatty conspired with the others to rob Fox. The evidence clearly established that shots were fired while Fox was at the carwash and that Fox fled. Beatty's own statement supports the conclusion that the co-conspirators came out of the woods trying to jump Fox and beat him up and that after Fox got into his car, people started shooting at his car. There is simply no basis to conclude that Fox initiated the confrontation before the co-conspirators could initiate the plan to rob him or that the robbers did not sufficiently confront or threaten Fox to support a conclusion that a completed robbery did not occur. We conclude that Judge Card did not err in refusing to instruct the jury on the lesser-included offense of attempted robbery in the first degree because the record

---

**19.** *See* Alaska R.Crim. P. 31(c).

**20.** *See Hartley v. State,* 653 P.2d 1052, 1054 (Alaska App.1982).

does not establish that some evidence supported a finding that this offense occurred.

The conviction is AFFIRMED.

MANNHEIMER, Judge, concurring.

I am writing separately to emphasize the salient points of our decision. This appeal presents two questions: (1) Is there such a crime as "attempted robbery" under Alaska's current criminal code? And, if so, (2) Did the evidence at Beatty's trial justify an instruction on this crime?

*There is a crime of attempted robbery under Alaska law*

Under AS 11.41.510(a), the offense of robbery includes not only forcible takings of property but also the use of force or threat of force in "attempting to take property from the immediate presence and control of another". If an attempt to take property constitutes the completed crime of robbery, is there any lesser conduct that might properly be called "attempted robbery"?

The answer is yes. As the majority opinion explains, the crime of robbery becomes complete when the defendant (acting with one of the culpable mental states specified in the statute) uses force or threatens the use of force in an attempt to take property from the immediate presence or control of another. But if the attempt to take the property never reaches this stage—*i.e.*, if the attempt is frustrated or interrupted before the defendant (or one of the defendant's accomplices) begins to use force or threatens to use force—then the defendant's conduct may constitute an attempted robbery. This is because, under AS 11.31.100(a), an attempt may be proved based on various preparatory acts that can occur before the would-be robber ever begins or threatens the use of force. According to the commentary written by the drafters of our Criminal Code, an attempt can consist of acts such as lying in wait for the victim, searching for or following the intended victim, enticing the victim to come to the place contemplated for the offense, gathering unlawful materials to be used in the commission of the offense, or any other overt act done toward the commission of the contemplated offense.[1]

*Did the evidence at Beatty's trial justify a jury instruction on the lesser offense of attempted robbery?*

Because Beatty was charged with robbery, attempted robbery was a potential lesser included offense in his case. But a defendant is not entitled to a jury instruction on a potential lesser included offense unless (1) the defendant necessarily committed the lesser offense if he or she committed the charged offense in the manner alleged by the State; (2) the defendant actually disputes the element or elements distinguishing the charged offense from the lesser; and (3) the evidence would support a reasonable conclusion that the defendant is guilty of only the lesser offense and not the charged offense.[2]

Beatty's appeal falters on this third requirement. The evidence at Beatty's trial shows that Beatty and his accomplices conspired to rob Fox, lured Fox to the place contemplated for the robbery, and then fired shots at Fox as he fled to avoid being robbed. Even if Fox became suspicious and began to flee before Beatty and his cohorts could threaten Fox or otherwise communicate their intention to rob him, this active use of force to prevent Fox's flight made the crime of robbery complete.

Beatty does not dispute that shots were fired at Fox, but he suggests that his crime might still be attempted robbery if those shots were fired in self-defense. Beatty suggests the following scenario: he and his accomplices conspired to rob Fox, and they lured Fox to a location where the robbery would take place; but before they ever threatened Fox or communicated their intention to rob him in any other manner, Fox

---

1. *See* Alaska Criminal Code Revision, Tentative Draft, Part 2 (1977), p. 73.

2. *See State v. Minano*, 710 P.2d 1013, 1016 (Alaska 1985); *Elisovsky v. State*, 592 P.2d 1221, 1225 (Alaska 1979); *Petersen v. State*, 930 P.2d 414, 433 (Alaska App.1996); *Blackhurst v. State*, 721 P.2d 645, 648 (Alaska App.1986).

commenced an unprovoked assault on *them*—and thus Beatty and his accomplices shot at Fox in self-defense rather than in furtherance of the planned robbery.

There is no evidence to support these assertions. Beatty's scenario rests entirely on speculation. Thus, he was not entitled to a jury instruction on attempted robbery.