■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL TEXIDOR, Appellant. [896 NYS2d 234]—

Stein, J. Appeal from a judgment of the County Court of Clinton County (McGill, J.), rendered April 9, 2008, upon a verdict convicting defendant of the crimes of sexual abuse in the first degree (three counts), sexual abuse in the second degree (three counts), endangering the welfare of a child (four counts), aggravated sexual abuse in the second degree, criminal sexual act in the first degree and criminal sexual act in the second degree.

Defendant resided with his girlfriend—the victim's mother (hereinafter the mother)—and her two young children in the Town of Plattsburgh, Clinton County. The victim (born in 1992) resided permanently with her father in Connecticut, but often visited her mother and younger siblings in Clinton County during summers and holiday vacations. The victim alleged that, beginning in the summer of 2003, defendant began to sexually abuse her during such visits and that the abuse continued and progressively escalated until the summer of 2006. The victim finally disclosed the abuse in May 2007 to her then-boyfriend, who, in turn, reported it to the victim's father, resulting in the filing of a police report and defendant's arrest. Defendant was subsequently charged by a 14-count indictment with various sex

crimes and was convicted after a jury trial of all but one of the charges—three counts each of sexual abuse in the first degree and sexual abuse in the second degree, four counts of endangering the welfare of a child, and one count each of aggravated sexual abuse in the second degree, criminal sexual act in the first degree and criminal sexual act in the second degree. Following his convictions, defendant was sentenced to, among other things, an aggregate prison term of 21 years. Defendant now appeals.

Initially, County Court correctly denied defendant's motion, following a *Huntley* hearing, to suppress his oral statements to Child Protective Services (hereinafter CPS) caseworker Lisa Begor. Begor interviewed defendant at the Clinton County jail in June 2007—approximately one month after defendant's arrest—in connection with her CPS investigation. There is no record evidence that a member of law enforcement was with Begor at the time of the interview and at no point during the interview did defendant request that his attorney be present. Under these circumstances, County Court properly determined that defendant's statements to Begor were not the product of interrogation by a " 'public servant engaged in law enforcement activity or by a person then acting under his [or her] direction or in cooperation with him [or her]' " (*People v Wilhelm*, 34 AD3d 40, 44 [2006], quoting CPL 60.45 [2] [b] [ii]; *see People v Velasquez*, 68 NY2d 533, 537 [1986]; *People v Knapp*, 57 NY2d 161, 173-174 [1982], *cert denied* 462 US 1106 [1983]; *People v Greene*, 306 AD2d 639, 640-641 [2003], *lv denied* 100 NY2d 594 [2003]).

We are also unpersuaded by defendant's challenge to the convictions as unsupported by legally sufficient evidence or against the weight of the credible evidence. The victim testified in great detail regarding defendant's sexual abuse of her. According to her testimony, the first incident occurred around July 4, 2003[1] when, as she was watching a movie on the bed in her mother's bedroom, defendant touched her breasts underneath her clothing and put his finger inside her vagina, causing her to experience "[s]hocking pain." Although she tried to get away, defendant held her down with his arm. The victim testified that defendant also touched her breasts on other occasions during the summer of 2003. Additionally, later in the summer of 2003, while the victim was lying on her stomach on the couch watching television alone, defendant sat down on the couch and placed her head on his lap. Defendant then put his hand on top of the victim's hand and made the victim rub his penis on the

---

1. At the time, the victim was 11 years old. At all times relevant herein, defendant was over the age of 18.

outside of his clothing for a few minutes, causing it to become erect. The victim testified that she was not able to pull her hand away.

The victim further testified that, during the summer of 2005, defendant touched her breasts on the inside and outside of her clothing and that she was unable to get away from defendant when this occurred. Additionally, one day during the victim's visit in the summer of 2006, she was watching television on the couch when defendant entered the room, sat down next to her, put his hand up her shirt and underneath her bra, "squeez[ed] [her] boobs" and then put his finger in her vagina, causing her to feel a "very shocking pain." The victim testified that defendant then pretended to drop a pencil, bent down toward the floor, changed the position of the victim's pajama bottoms and underwear, spread her legs apart—despite her attempt to resist—and licked the inside and outside of her vagina for several minutes. At the time of this incident, the victim's sisters were in their bedroom and her mother was cooking dinner approximately 10 feet away. Defendant allegedly stopped touching the victim when he heard her mother walking toward the couch. Shortly thereafter, the victim went to the bathroom, where she saw blood on her underwear and pajamas.

Defendant testified that he never touched the victim's breasts, put his hands down her pants, touched her vagina, placed his mouth on her vagina, or put her hands on his penis. However, he admitted to wrestling with the victim and her siblings and slapping her on the butt. Defendant also admitted that he watched movies in bed with the victim and her mother, and acknowledged that the mother sometimes fell asleep. Defendant further testified that, in 2006 or 2007, he told the victim that her boyfriend could not spend the summer with them, and the victim "was a little upset" with him.[2] The testimony of the victim's mother substantially supported defendant's theory that the victim was lying about the abuse because she was upset that defendant would not allow her boyfriend to visit. Defendant also argues that the victim's testimony is unworthy of belief for several reasons. Specifically, he notes that she did not avoid being alone with him, cry out or report the abuse until well after it had allegedly occurred, despite having had numerous opportunities to do so. In addition, he points to the absence of evidence of any threat of harm and to the improbability of the victim's testimony that, during certain of the incidents, he held

---

**2.** State Trooper Trever Giroux testified that, when he asked defendant if he thought the victim was lying about the sexual abuse, defendant responded, "I don't see why she's reporting this now."

her down with the same arm that he was also allegedly using to remove her clothing or touch her vagina.

The element of forcible compulsion must be viewed through "the state of mind produced in the victim by the defendant's conduct" (*People v Thompson*, 72 NY2d 410, 416 [1988]), considering all "relevant factors includ[ing] the age of the victim, the relative size and strength of the defendant and victim, and the nature of the defendant's relationship to the victim" (*People v Sehn*, 295 AD2d 749, 750 [2002], *lv denied* 98 NY2d 732 [2002]; *see People v Scanlon*, 52 AD3d 1035, 1038 [2008], *lv denied* 11 NY3d 741 [2008]; *People v Val*, 38 AD3d 928, 929 [2007], *lv denied* 9 NY3d 852 [2007]; *People v Newell*, 290 AD2d 652, 653-654 [2002], *lv denied* 98 NY2d 712 [2002]). Here, the jury apparently discredited defendant's denial, as well as his theory that the victim was lying about the abuse because she was upset that defendant would not permit her boyfriend to spend the summer with them, and credited the victim's testimony—including her allegations of forcible compulsion—despite the absence of any physical evidence[3] or other independent corroboration. We do not find the victim's testimony to be unworthy of belief as a matter of law (*see People v Smith*, 272 AD2d 713, 716 [2000], *lv denied* 95 NY2d 871 [2000]). Viewing the evidence in the light most favorable to the People (*see People v Cabey*, 85 NY2d 417, 420 [1995]; *People v Roberts*, 63 AD3d 1294, 1296 [2009]) and giving them the benefit of every favorable inference (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Scanlon*, 52 AD3d at 1038), we find that they met their burden of proving every element of the crimes of which defendant was found guilty, including, where relevant, forcible compulsion (*see* Penal Law § 130.50 [1]; § 130.65 [1]; § 130.67 [1] [a]). Furthermore, in examining all the credible evidence in a neutral light, we are satisfied that, while a different verdict would not have been unreasonable, the verdict is supported by the weight of the evidence (*see People v Bleakley*, 69 NY2d at 495; *People v Davis*, 260 AD2d 726, 729 [1999], *lv denied* 93 NY2d 968 [1999]).

We discern no error in County Court's denial of defendant's request to recall the victim during his case-in-chief to question her regarding her grand jury testimony and the statement she gave the police. Inasmuch as defense counsel was in possession of that testimony and statement before the victim testified on the People's case-in-chief, the proposed line of questioning could

---

3. Giroux testified that a physical examination of the victim was not performed because of the time span between the last alleged incident of sexual abuse and the time it was reported and because the victim had been sexually active.

have been covered on cross-examination (*see People v Bunting*, 134 AD2d 646, 648 [1988], *lv denied* 70 NY2d 1004 [1988]; *compare People v Perez*, 40 AD3d 1131, 1132 [2007]; *People v Israel*, 161 AD2d 730, 731-732 [1990]).

Defendant correctly argues—and, indeed, the People concede—that the sentences on counts eight and nine were improperly imposed consecutively, rather than concurrently, to other determinate sentences imposed and must be modified accordingly (*see* Penal Law §§ 70.15, 70.35). Finally, we find no merit to defendant's contention that his sentence was harsh and excessive (*see People v Sidbury*, 24 AD3d 880, 881-882 [2005], *lv denied* 6 NY3d 818 [2006]).

Defendant's contention that he was deprived of the right to a fair trial because he was forced to appear before the jury in prison garb is unpreserved for our review, and is, in any event, belied by the record (*see Estelle v Williams*, 425 US 501, 512 [1976]; *compare People v Thomas*, 125 AD2d 873, 874 [1986]).

Cardona, J.P., Peters, Spain and Garry, JJ., concur. Ordered that the judgment is modified, on the law, by directing that defendant's sentences for sexual abuse in the second degree and endangering the welfare of a child under counts eight and nine of the indictment shall run concurrently rather than consecutively with the other determinate sentences imposed, and, as so modified, affirmed.