NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

STATE OF ALASKA,

                    Appellant,

          v.

THOMAS A. MAYFIELD,

                    Appellee.

Court of Appeals No. A-12534
Trial Court No. 4FA-15-02245 CR

O P I N I O N

No. 2643 — May 3, 2019

Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellant. Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge ALLARD.

---

[*]    Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Thomas A. Mayfield was indicted by a Fairbanks grand jury for attempted second-degree sexual assault. Mayfield's attorney moved to dismiss the indictment, arguing that the evidence presented to the grand jury was legally insufficient to establish attempted second-degree sexual assault. The superior court granted this motion. The State now appeals.

For the reasons explained here, we affirm the superior court's dismissal of the indictment.

*Background facts and prior proceedings*

On September 27, 2015, fourteen-year-old H.R. went to the Regal Cinema in Fairbanks with her younger sister and her friend. The three girls sat at the end of a row toward the back of the theater. The seat next to H.R. was empty. Twenty-one-year-old Mayfield was sitting in the seat next to this empty seat. Mayfield was at the theater with two of his friends.

After the girls sat down, H.R.'s sister noticed that Mayfield was staring and smiling at them. H.R.'s sister told H.R.; H.R. ignored Mayfield. A short time later, after the movie started, H.R. glanced over and realized that Mayfield had moved into the empty seat next to her. H.R. also saw that Mayfield had put his hand, palm-side up, in the gap between the seats, so that his hand was resting close to her knee. H.R. thought this was "weird," and Mayfield's proximity "freaked [her] out."

H.R. scooted over in her seat so that she was further away from Mayfield and closer to her sister. When H.R. glanced back at Mayfield, she saw Mayfield slowly moving his hand upwards. H.R. then felt "a push on [her] hip," and "the force started going down and he was trying to put his hand in my pants."

At the grand jury hearing, the prosecutor asked H.R. to describe exactly what happened:

*Prosecutor*: Okay. And when you said you felt something on your hip, do you know what that was you felt on your hip?

*H.R.*: His hand, because when I looked down I saw it.

*Prosecutor*: Okay. And then you said something about his hand in your pants, what happened after that?

*H.R.*: I jumped. I looked over, and I said — I yelled at him.

*Prosecutor*: Okay. So let's talk about why you yelled at him. What is it that he did that made you yell at him?

*H.R.*: Touching me.

*Prosecutor*: Okay. So you said you felt his hand on your hip, right? Okay. Did something happen after that?

*H.R.*: What do you mean? Like, he pushed his hand. Like, he got, like, under my sweats.

*Prosecutor*: Okay. So did he put his hand in your pants?

*H.R.*: He got his fingertips in my pants, but I had leggings on, so —

*Prosecutor*: Okay.

*H.R.*: Right.

*Prosecutor*: Where did he put his hand? Was it — when he was trying to put his hand down your pants, was it in the front or back or somewhere else?

*H.R.*: It was just on the side.

*Prosecutor*: Just on the side.

*H.R.*: Like —

– 3 –

*Prosecutor*: Okay. And when he did that, how did you react?

*H.R.*: It scared me, so I jumped, and I — I said — yelled at him.

*Prosecutor*: And you yelled at him?

*H.R.*: Well, not yelled, but I said something.

*Prosecutor*: Do you remember what you said?

*H.R.*: Yeah. I said, "Don't f-ing touch me." . . .[1]

*Prosecutor*: Okay. After you did that, what did you do next?

*H.R.*: I leaned over and told my friend that we should go.

*Prosecutor*: Okay.

*H.R.*: Actually I said he just touched me. He just touched me. I was, like, he just grabbed my butt. Like, just like, I was so scared, I just said, and then, like, then we got up and left.

The girls got out of their seats and called H.R.'s foster mother, who told the girls to tell the theater manager. The theater manager contacted the police, and Mayfield was arrested when he left the theater.

Mayfield was originally arrested for assault in the fourth degree, a class A misdemeanor,[2] harassment in the second degree, a class B misdemeanor,[3] and violating

---

[1] H.R. then explained to the jury that she used an expletive for "f-ing."

[2] AS 11.41.230(a)(3), (b).

[3] AS 11.61.120(a)(5), (b) (subjecting a person to offensive physical contact with the
(continued...)

conditions of release, a class B misdemeanor.[4]  The assault charge was subsequently elevated to attempted second-degree sexual assault, a class C felony.[5]  Mayfield was then indicted on that charge, with a separate information charging him with harassment and violating conditions of release.

Mayfield's attorney filed a motion to dismiss the indictment, arguing that the evidence presented to the grand jury was insufficient to establish the crime of attempted second-degree sexual assault.  The defense attorney argued specifically that the State had not shown that Mayfield used or threatened any force against H.R.

In response, the prosecutor argued that the State was not required to show that Mayfield intended to use or threaten the use of force in attempting to have sexual contact with H.R.  Instead, the prosecutor contended that the State was only required to show that Mayfield intended to engage in sexual contact with H.R. and that Mayfield acted in reckless disregard of H.R.'s lack of consent.

The superior court dismissed Mayfield's indictment.  Relying on our unpublished opinion in *State v. Townsend*,[6] the court concluded that "[e]vidence that the defendant engaged in or attempted to engage in unwanted contact with H.R. is not enough."  Instead, the court concluded that "[t]here must be evidence before the grand jury that the defendant attempted to coerce sexual contact with H.R. by the use of force or threats."  Because there was no such evidence, the court dismissed the indictment.

The State now appeals.

---

[3]  (...continued)
intent to harass or annoy that person).

[4]  AS 11.56.757(a), (b).  Mayfield was on bail release from a disorderly conduct charge at the time of the incident.

[5]  AS 11.41.420(a)(1) & AS 11.31.100(a); AS 11.31.100(d)(4).

[6]  *State v. Townsend*, 2011 WL 4107008 (Alaska App. Sept. 14, 2011) (unpublished).

*The elements of the completed crime of second-degree sexual assault*

The dispute in this case primarily turns on a question of law: What does the State need to prove in order to establish that a defendant is guilty of attempted second-degree sexual assault? We begin our discussion by reviewing the elements of the completed crime of second-degree sexual assault, and we then discuss the elements that must be proven to establish attempted second-degree sexual assault.

Under AS 11.41.420(a)(1), a defendant commits the completed crime of second-degree sexual assault if the defendant (1) engages in "sexual contact" with another person, and (2) the sexual contact is "without consent."[7] In *Reynolds v. State* we interpreted the statute to require an additional element: (3) that the defendant acts in reckless disregard of the circumstance that the sexual contact is "without consent."[8]

The first element of the crime is that the defendant engages in "sexual contact" with another person. Under AS 11.81.900(b)(60), "sexual contact" means "knowingly touching, directly or through clothing, the victim's genitals, anus, or female breast" or "knowingly causing the victim to touch, directly or through clothing, the defendant's or victim's genitals, anus, or female breast." Touching another person's

---

[7] *See* Alaska Criminal Pattern Jury Instruction 11.41.420(a)(1) (2002).

[8] *See Reynolds v. State*, 664 P.2d 621, 625 (Alaska App. 1983). In *Reynolds*, we read this recklessness *mens rea* requirement into the sexual assault statute in recognition of the fact that, in eliminating the common law requirement of resistance, the legislature had "substantially enhanced the risk of conviction in ambiguous circumstances" and increased the likelihood that a defendant could be unfairly convicted of sexual assault even if the defendant honestly and reasonably believed that the sexual contact was not without consent. *Id.* at 624-25.

buttocks does not constitute "sexual contact" under Alaska law.[9] However, touching another person's buttocks may constitute the crime of harassment.[10]

The second element of the crime is that the sexual contact is "without consent." This term has a specialized legal meaning under Alaska law. Under AS 11.41.470(8)(A), "without consent" means that the victim of the sexual contact, "with or without resisting, is coerced by the use of force against a person or property, or by the express or implied threat of death, imminent physical injury, or kidnapping to be inflicted on anyone."[11]

Thus, coercion by the use or threat of force is a central element of sexual assault under Alaska law. The criminal code broadly defines "force" as "any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement."[12] But to prove the use of "force" in the context of sexual assault, the

---

[9] *See Reakoff v. State*, 1998 WL 224919, at *4 (Alaska App. May 6, 1998) (unpublished) (citing *Braun v. State*, 911 P.2d 1075, 1078 (Alaska App. 1996) (noting that the touching of another person's buttocks is not "sexual contact")).

[10] *See* AS 11.61.118(a)(2) ("A person commits the crime of harassment in the first degree if . . . the person violates AS 11.61.120(a)(5) and the offensive physical contact is contact by the person touching through clothing another person's genitals, buttocks, or female breast."); AS 11.61.120(a)(5) ("A person commits the crime of harassment in the second degree if, with intent to harass or annoy another person, that person . . . subjects another person to offensive physical contact.").

[11] A sexual act is also "without consent" if the person is "incapacitated as a result of an act of the defendant." AS 11.41.470(8)(B). This portion of the definition is not at issue in this case.

[12] AS 11.81.900(b)(28).

bodily impact or restraint must be more than simply the bodily impact or restraint inherent in the charged act of sexual penetration or contact.[13]

As the statutory definition makes clear, coercion can be established either by force or the threat of force.[14] Resistance by the victim is not required. Instead, sexual activity can be coerced even if the victim acquiesces or submits without resisting.[15] Moreover, the question of coercion is evaluated under the totality of the circumstances, from the perspective of the victim who is subjected to the unwanted sexual activity.[16]

---

[13]  *See Inga v. State*, ___ P.3d ___, 2019 WL 989309 (Alaska App. Mar. 1, 2019); *see also Townsend*, 2011 WL 4107008, at *7-8 (Mannheimer, J., concurring); *Inga v. State*, 2004 WL 719626, at *5 (Alaska App. Mar. 31, 2004) (unpublished).  The requirement that the bodily impact, restraint, or confinement be more than simply the bodily impact or restraint inherent in the charged act of sexual penetration or contact derives from the common law and remains the law in the majority of jurisdictions.  *See State v. Jones*, 299 P.3d 219, 228 (Idaho 2013) ("The extrinsic force standard is the traditional view and 'is still the most commonly adopted.'").  *See generally* 2 Wayne R. LaFave, *Substantive Criminal Law* § 17.3(a), (b), at 841-50 (3d ed. 2017) (discussing extrinsic force requirement and collecting cases).

[14]  AS 11.41.470(8)(A).

[15]  *See, e.g.*, *Ritter v. State*, 97 P.3d 73, 77-78 (Alaska App. 2004); *Nicholson v. State*, 656 P.2d 1209, 1213 (Alaska App. 1982).

[16]  *See, e.g.*, *Maslin v. State*, 718 N.E.2d 1230, 1235 (Ind. App. 1999), *rev'd on other grounds by Ludy v. State*, 784 N.E.2d 459 (Ind. 2003) (noting that it is from the rape victim's perspective, not the assailant's, that the presence or absence of forceful compulsion is to be determined, and that this is a subjective test that looks to the victim's perception of the surrounding circumstances); *People v. Texidor*, 71 A.D.3d 1190, 1193 (N.Y. App. Div. 2010) (stating that the element of forcible compulsion must be viewed through "the state of mind produced in the victim by the defendant's conduct," considering "all relevant factors including the age of the victim, the relative size and strength of the defendant and the victim, and the nature of the defendant's relationship to the victim") (internal citations omitted).  *See generally* 2 Wayne R. LaFave, *Substantive Criminal Law* § 17.3(a), (b), at 841-50 (3d ed. 2017).

However, the defendant's perspective is important to the third element of second-degree sexual assault. Under this Court's decision in *Reynolds v. State*, the State must prove that the defendant recklessly disregarded the circumstance that the sexual activity was "without consent."[17] That is, the State must prove that the defendant was subjectively aware of a substantial and unjustifiable risk that the victim was coerced by the use of force or threat of force — or that the defendant would have been aware of this risk but for the defendant's voluntary intoxication.[18]

(As defined in AS 11.81.900(a)(3), a "substantial and unjustifiable risk" is a risk "of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.")

In our past cases, we have often used a shorthand when describing the element of "without consent." We have sometimes declared, for example, that in a prosecution for sexual assault, the State is required to show that (1) the defendant knowingly engaged in the sexual act, and that (2) the defendant recklessly disregarded the victim's "lack of consent." But this shorthand description of the "without consent" element is potentially misleading because the phrase "lack of consent" could be misread as referring only to the fact that the sexual activity was unwanted, without the element of coercion also required to establish sexual assault under Alaska law.

*The elements of attempted second-degree sexual assault*

Having reviewed the elements of the completed crime of second-degree sexual assault, we now address the elements of attempted second-degree sexual assault. Under AS 11.31.100(a), a person is guilty of an attempt to commit a criminal offense if,

---

[17] *Reynolds v. State*, 664 P.2d 621, 625 (Alaska App. 1983).

[18] *Id.* at 625, 627; *see* AS 11.81.900(a)(3); AS 11.81.900(b)(35).

"with intent to commit a crime, the person engages in conduct which constitutes a substantial step toward the commission of that crime." Thus, to convict a defendant of attempted second-degree sexual assault, the State needs to prove that (1) the defendant intended to commit the crime of second-degree sexual assault, and (2) the defendant took a substantial step toward the commission of this crime. (This is similar to the formulation used in other states to define attempted sexual assault crimes.[19])

But this definition is far from self-explanatory. As the present appeal illustrates, substantial uncertainty has arisen as to exactly what the State must prove to show that a defendant "intended to commit the crime of second-degree sexual assault." The parties to this case also disagree regarding what elements of the completed crime must be present in order for the defendant's actions to constitute a "substantial step" toward the commission of the completed crime of second-degree sexual assault.

---

[19] *See, e.g.*, *People v. Dixon*, 75 Cal.App.4th 935, 942, 89 Cal.Rptr.2d 602, 607 (Cal. App. 1999) ("Attempted sexual battery requires (1) an intent to and (2) a direct but ineffectual act in an attempt to, touch an intimate part of the body (contact with the victim's skin) of a victim unlawfully restrained (by force or fear), without the victim's consent, for the purpose of sexual arousal, sexual gratification, or sexual abuse."); *State v. Allen*, 237 P.3d 14, 16 (Idaho 2010) ("An attempt consists of: '(1) an intent to do an act . . . which would in law amount to a crime; and (2) an act in furtherance of that intent which, as it is most commonly put, goes beyond mere preparation.'" (quoting *State v. Grazian*, 164 P.3d 790, 796 (Idaho 2007))); *State v. Rick*, 463 S.E.2d 182, 188 (N.C. 1995) ("In order to prove an attempt to commit an offense, the State must show defendant intended to commit the offense and made an overt act, going beyond mere preparation, for that purpose, but falling short of the completed offense."). *See generally* 2 Wayne R. LaFave, *Substantive Criminal Law* § 11.3(a), at 293-98 (3d ed. 2017) (noting that the mental state required for the crime of attempt is the intent to commit the relevant crime, though the defendant need not intend criminality per se).

We partially addressed these questions in two prior decisions: *Guertin v. State*[20] and *Sergie v. State*.[21] In *Guertin*, the defendant argued that there was no such crime as "attempted second-degree sexual assault" because (according to Guertin) "attempt" crimes could only exist for specific-intent offenses — that is, offenses where a *mens rea* of "intentionally" is attached to a specific result. In other words, Guertin argued that it was logically impossible for a person to "intentionally" commit a crime when that crime was defined by the person's reckless disregard of the victim's lack of consent.[22] Guertin also argued that the jury instructions in his case failed to adequately inform the jury that the State had to prove that Guertin actually *intended* to engage in sexual contact with the victim, rather than simply creating a substantial risk that such sexual contact might occur.[23]

We rejected both arguments, concluding that the crime of attempted sexual assault existed and that the crime required proof that the defendant "attempted to engage in sexual contact with another person without regard to that person's lack of consent."[24] We also found that the jury instructions, when read in a common-sense fashion, were adequate to convey the State's obligation to prove that the defendant's conscious goal was to engage in the prohibited sexual contact.[25]

This Court's ruling in *Guertin* became the basis for a jury instruction that was challenged more than ten years later in *Sergie v. State*, where we addressed the

---

[20] *Guertin v. State*, 854 P.2d 1130 (Alaska App. 1993).

[21] *Sergie v. State*, 105 P.3d 1150 (Alaska App. 2005).

[22] *Guertin*, 854 P.2d at 1131.

[23] *Id.* at 1133.

[24] *Id.*

[25] *Id.*

elements of attempted first-degree sexual assault.[26]  *Sergie* involved an intoxicated husband who physically assaulted his wife, pushing her down to the floor multiple times.[27]  Sergie then began removing his wife's shirt and bra and trying to remove her pants, telling his wife to "spread [her] legs."[28]  Sergie's attack on his wife was witnessed by his sister and another family member, and was eventually stopped by the sister's calling the police.[29]  At trial, the jury was instructed (in accordance with *Guertin*) that to convict Sergie of attempted first-degree sexual assault, the State was required to prove beyond a reasonable doubt that Sergie "intended to engage in sexual penetration with another person without regard to that person's lack of consent."[30]

On appeal, Sergie argued that the *mens rea* of "intentionally" applied to both the phrase "sexual penetration with another" *and* the phrase "that person's lack of consent."[31]  In other words, Sergie argued that a defendant could only be found guilty of attempted first-degree sexual assault if the defendant's conscious objective was to engage in sexual penetration with a victim that he *knew* was unwilling — and that a defendant's willingness to proceed with the sexual penetration regardless of the victim's lack of consent was not enough.  We rejected this claim, concluding that it was enough for the

---

[26]  *Sergie*, 105 P.3d at 1153.

[27]  *Id.* at 1152-53.

[28]  *Id.*

[29]  *Id.* at 1152.

[30]  *Id.* at 1153.

[31]  *Id.*

State to prove that "Sergie intended to engage in sexual penetration with [his wife] *whether she consented or not*."[32]

As the parties in the current case both point out, our discussion in *Sergie* was not as complete as it could have been, because the decision says very little about the coercion element of "without consent." Instead, the language of our decision focuses primarily on the victim's subjective willingness or unwillingness to engage in the attempted sexual activity. *Sergie* did not directly address the issue of coercion, presumably because the defendant's willingness to use force was already apparent under the facts of this case.

The failure of either *Sergie* or *Guertin* to directly address the coercion element of "without consent" leads Mayfield to argue that these cases were wrongly decided and should be overruled by this Court.[33] The State argues that *Sergie* and *Guertin* should be clarified rather than overruled. We agree with the State that our prior caselaw is potentially misleading and that additional clarification of the "without consent" coercion element is required.

As has been recognized in other jurisdictions, to be guilty of attempted sexual assault, a defendant must intend — or at least conditionally intend — to use "whatever force is required to commit the sexual act against the victim's will."[34] That

---

[32] *Id.* at 1155 (emphasis added).

[33] *See Thomas v. Anchorage Equal Rights Comm'n*, 102 P.3d 937, 943 (Alaska 2004) ("We will overrule a prior decision only when clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent.") (internal quotations omitted).

[34] *United States v. Bolanos-Hernandez*, 492 F.3d 1140, 1147 n.5 (9th Cir. 2007) (internal citations omitted). *See generally* Laurie L. Levenson & Alex Ricciardulli, The Rutter Group, *California Criminal Law* § 7:12 (2018-2019 ed.) ("The specific intent required for a
(continued...)

is, the defendant must be willing to use force or threat of force to the extent necessary to achieve the desired sexual contact.

As a general matter, the law views a qualified or conditional intent as just as culpable as an unconditional intent.[35] Thus, if a defendant attempts to carry away an item of property not knowing whether it belongs to him or is simply a similar-looking item, and if the defendant intends to keep the item no matter to whom it belongs, then this is attempted theft.[36] Likewise, if a defendant is aware of a substantial and unjustifiable risk that a victim is unwilling to engage in sexual contact, and if the defendant intends to use force or threat of force if necessary to effectuate their intended goal of sexual contact, then the defendant is guilty of attempted second-degree sexual assault.

How the State proves such an intent or conditional intent will depend on the circumstances of the specific case. Proof that the defendant actually used force or threat of force in an attempt to achieve the unwanted sexual contact will, of course, be legally sufficient to prove the defendant's willingness to use force or threat of force for purposes of defeating a motion for judgment of acquittal or a motion to dismiss an indictment based on insufficiency of the evidence. But the defendant's "substantial step" toward commission of the completed crime need not necessarily involve the actual use of force or threat of force to survive such motions or to support a conviction. Rather, the question is whether, given all the circumstances, the State has proved that the defendant intended or conditionally intended to use force or threat of force if necessary to achieve

---

[34] (...continued)
conviction for attempted sexual assault has been described as the intent to use whatever force is required to complete the sexual act against the victim's will.").

[35] *See* Rollin M. Perkins and Ronald N. Boyce, *Criminal Law*, 640 (3d ed. 1982).

[36] *Id.*

the sexual contact. In other words, although a defendant's "substantial step" toward committing the sexual assault need not necessarily include an active use of force or the threat of force, the defendant's actions must still be "strongly corroborative" of the defendant's willingness to use force or threat of force if necessary to effectuate the intended sexual contact.[37]

In sum, to prove that a defendant committed the crime of attempted second-degree sexual assault under AS 11.41.420(a)(1), the State must establish that:

(1) the defendant intended to engage in sexual contact with the victim;

(2) the defendant recklessly disregarded a substantial and unjustifiable risk that the victim was unwilling to engage in the sexual contact;

(3) the defendant intended to use force or threat of force if necessary to achieve the sexual contact; and

(4) the defendant took a substantial step toward achievement of the completed crime.

*Application of this law to the current case*

Under Alaska Criminal Rule 6(q), "[t]he grand jury shall find an indictment when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant." In making the determination of whether an indictment

---

[37] *See Avila v. State*, 22 P.3d 890, 893-94 (Alaska App. 2001) (noting that although the Alaska criminal code does not explicitly define "substantial step," Alaska generally follows the approach taken by the Model Penal Code: to qualify as a "substantial step," the defendant's act must be "strongly corroborative of the actor's criminal purpose." (quoting Alaska Criminal Code Revision, Tentative Draft, Part II at 72-73 (1977))); *Iyapana v. State*, 284 P.3d 841, 848 (Alaska App. 2012); *Beatty v. State*, 52 P.3d 752, 755-56 (Alaska App. 2002).

was proper, the court must draw all legitimate inferences from the evidence in favor of the indictment, and determine whether there exists a "probability of guilt."[38]

In the current case, the superior court found that the evidence presented to the grand jury was insufficient to establish that Mayfield intended to use force or threat of force if necessary to achieve the sexual contact.

On appeal, the State criticizes this ruling, arguing that the superior court erroneously required the State to prove that the "substantial step" underlying the attempted sexual assault included the active use of force or threat of force. We read the superior court's order differently. Although the State is correct that a defendant's "substantial step" need not involve the active use of force or threat of force, the conduct must still be "strongly corroborative" of the defendant's willingness to use force or threat of force to effectuate the intended sexual contact.[39]

Here, the evidence showed that Mayfield engaged in physical contact with H.R. — contact that alarmed and frightened her. Mayfield put the fingertips of his hand on H.R.'s hip between her pants and leggings — an action that H.R. described to her friends as Mayfield "grabb[ing] her butt." But there is no indication that Mayfield reached toward H.R.'s genitals, or that his intent was to have contact with H.R.'s genitals. Nor is there any indication that Mayfield intended (or conditionally intended) to use force or the threat of force to touch H.R.'s genitals.

In its briefing on appeal, the State compares this case to *Nicholson v. State*,[40] and argues that similar reasoning should apply here. But the circumstances in *Nicholson* were materially different from those presented here. *Nicholson* involved a

---

[38] *Sheldon v. State*, 796 P.2d 831, 836-37 (Alaska App. 1990).

[39] *See Avila*, 22 P.3d at 893-94; *Iyapana*, 284 P.3d at 848; *Beatty*, 52 P.3d at 755-56.

[40] *Nicholson v. State*, 656 P.2d 1209 (Alaska App. 1982).

defendant who broke into a house in the early morning hours and proceeded to take his clothes off and climb into bed with the sleeping fifteen-year-old victim.[41] The victim awoke to find the naked defendant in her bed, fondling her breasts and kissing her.[42] Taken by surprise, she hesitated for a moment, and then jumped up, waking her sister.[43] The two girls fled downstairs, where they armed themselves with butcher knives.[44] Nicholson was later convicted of second-degree sexual assault, as a lesser included charge of the charged attempted first-degree sexual assault.[45]

On appeal, Nicholson argued that there was insufficient evidence to indict him for attempted first-degree sexual assault, arguing that his conduct only supported an inference that he wished to fondle the breast of the victim, not that he intended sexual penetration.[46] We rejected this argument, concluding that:

> a jury could reasonably infer that Nicholson intended to "penetrate" K.R. and that entering her bed naked and uninvited and fondling her were "substantial steps" toward the commission of that crime. We are satisfied that a jury could conclude that if Nicholson had intended only sexual contact [as opposed to penetration], he would not have undressed before entering her bed and that if he did not intend to coerce her he would not have entered her home

---

[41] *Id.* at 1210.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.* at 1211-12.

uninvited in the early morning hours when a jury could find that he knew her parents would be gone.[47]

The circumstances of Mayfield's case are far more ambiguous as to the defendant's intent to use or threaten force to engage in sexual contact. Although the State refers to Mayfield "putting his hand down H.R.'s pants," the testimony at the grand jury was that Mayfield put his fingertips between H.R.'s pants and leggings, and that he touched her only on her hip. Contrary to the State's assertions on appeal, there is no indication that Mayfield's hand would have impeded H.R.'s ability to stand up or to pull away from the unwanted touching. Nor is there any indication that Mayfield tried to continue to touch H.R. after she voiced her disapproval. There is also no way to tell what the intended goal of the touching was. H.R. herself apparently viewed it as an attempt to grab her "butt," and she initially described it as such to her sister and friend.

On appeal, the State points out the potentially coercive circumstances under which the touching occurred, focusing in particular on H.R.'s age and the fact that the movie theater was dark. We agree that such circumstances are relevant to a jury's consideration of whether an intent (or conditional intent) to use force has been shown. Also relevant, however, is the fact that H.R. was in a public place, accompanied by her sister and her friend, and surrounded by other moviegoers. We also note that the State has not charged Mayfield with attempted sexual abuse of a minor or put forward any evidence suggesting that Mayfield was aware of H.R.'s age or that Mayfield viewed H.R. as particularly vulnerable. And, as already noted, the State put forward no evidence as to the intended goal of the touching, which was limited in nature (although undoubtedly frightening to H.R.).

---

[47] *Nicholson*, 656 P.2d at 1212.

In sum, even viewing the evidence in the light most favorable to the indictment, the evidence shows that Mayfield engaged in offensive and unwanted touching of H.R. — touching that was frightening to her — but it does not show that Mayfield acted with the intent to force his hand down H.R.'s pants and touch her genitals "without consent."

A person cannot be indicted (or convicted) based on mere conjecture or speculation.[48] Because the evidence presented to the grand jury failed to show that Mayfield took a substantial step toward completing the crime of second-degree sexual assault, we agree with the superior court that this evidence was insufficient to support Mayfield's indictment. Accordingly, we affirm the superior court's dismissal of the indictment, and we remand this case to the superior court for further proceedings, as appropriate.[49]

*Conclusion*

The judgment of the superior court is AFFIRMED, and this case is REMANDED to the superior court for further proceedings consistent with this decision.

---

[48] *See* Alaska R. Crim. P. 6(q); *Allen v. State*, 420 P.2d 465, 467 (Alaska 1966).

[49] The record on appeal indicates that Mayfield has already pleaded no contest to second-degree harassment and violating conditions of release, and he has already been sentenced on those charges.